**Michael Kent POLAND, Petitioner,**

v.

**Terry STEWART, Respondent.**

**No. Civ. 98–1891–PHX–SPK.**

United States District Court, D. Arizona.

March 2, 1999.

Dale A. Baich, Assistant Federal Public Defender, Fredric F. Kay, Federal Public Defender, Office of the Federal Public Defender for the District of Arizona, Phoenix, AZ, Patrick E. McGillicuddy, Luhrs Tower, Phoenix, AZ, for petitioner.

Kent E. Cattani, Assistant Attorney General, Office of the Attorney General, Phoenix, AZ, for respondent.

*ORDER DISMISSING FIRST AMEND-ED PETITION WITHOUT PREJU-DICE*

SAMUEL P. KING, District Judge.

## I. INTRODUCTION

On January 7, 1999, Petitioner Michael Kent Poland ("Petitioner" or "Poland") filed a First Amended Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254, amending a habeas petition filed on October 20, 1998. Poland seeks, among other things, an evidentiary hearing on a claim that he is currently incompetent to be executed under *Ford v. Wainwright,* 477 U.S. 399, 410, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) (holding that "[t]he Eighth Amendment prohibits the State from inflicting the penalty of death upon a prisoner who is insane"). Respondent Terry Stewart, Director of the Arizona Department of Correction, filed an Answer to the First Amended Petition on January 22, 1999. Petitioner filed a Reply on February 8, 1999.[1]

Previously, this Court had stayed Poland's execution, which had been set for October 20, 1998. The Court indicated that Poland had presented evidence sufficient to entitle him to further process on his *Ford* claim. *See Poland v. Stewart,* 41 F.Supp.2d 1037 (D.Ariz. 1998), Order Granting Stay of Execution, *application to vacate denied,* —— U.S. ——, 119 S.Ct. 390, 142 L.Ed.2d 322 (1998) (the "Stay Order"). After entry of the Stay Order, the parties submitted supplemental briefing during October and November of 1998, addressing several court-propounded questions regarding ripeness, exhaustion, and Arizona's statutory scheme for considering competency claims. A hearing was held on December 7, 1998, after which Petitioner filed the First Amended Petition.

The Court has studied the various filings, considered arguments made at the December hearing, and reviewed the relevant case law. The Court's primary interest is, of course, that Petitioner not be executed unconstitutionally in violation of *Ford.* As indicated in the Stay Order, it appeared upon initial review that a federal evidentiary hearing on competence was required. After careful study, it is now clear that this case's posture creates difficult and paradoxical issues in terms of ripeness and exhaustion. For the reasons set forth to follow, the Court now dismisses the petition without prejudice for failure to exhaust. *See* 28 U.S.C. § 2254(b)(1); *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

## II. BACKGROUND

This case is not new. Even before staying the execution on October 20, 1998, this Court considered and denied a previous habeas petition by Poland. The denial of the previous petition was affirmed by the Ninth Circuit in 1997. *See Poland v. Stewart,* 117 F.3d 1094 (9th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1533, 140 L.Ed.2d 683 (1998). The Ninth Circuit opinion, and the opinions referenced in it, set forth this case's lengthy factual and procedural history; there is no need to detail it here except to note that Poland did not raise an incompetency-to-be-executed claim in the prior habeas petition.[2]

 On October 20, 1998, Poland raised a *Ford* claim by attempting to amend his previously-dismissed petition. Rather than allowing him to so amend, the Court construed the amendment as a new peti-

---

1. On February 8, 1999, the parties stipulated to dismiss without prejudice the Fifth and Sixth Claims for Relief in the First Amended Petition.

2. And even if he had, presumably the *Ford* claim would have been dismissed as premature. *See Herrera v. Collins,* 506 U.S. 390, 406, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) ("[T]he issue of sanity is properly considered in proximity to the execution."). The unexhausted *Ford* claim also would have raised mixed-petition concerns. *See Rose v. Lundy,* 455 U.S. 509, 520–22, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) (explaining "total exhaustion" rule).

tion not subject to the Antiterrorism and Effective Death Penalty Act of 1996's ("AEDPA's") requirement of obtaining permission from a court of appeals before filing a second or successive habeas application. *See Stewart v. Martinez–Villareal*, 523 U.S. 637, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998) (recognizing exception to AEDPA's gatekeeping requirement in 28 U.S.C. § 2244(b)(3)(C) for certain claims that could not have been adjudicated in prior habeas petitions).

*Martinez–Villareal* dealt with a situation where the petitioner had raised a *Ford* claim in an earlier petition, with the claim having been dismissed without prejudice on ripeness grounds. *See* 115 S.Ct. at 1620, 1622 n. *. Although—unlike in *Martinez–Villareal*—Poland had not raised a *Ford* claim in his first petition, this Court found that *Martinez–Villareal*'s reasoning applied with equal force because Poland's claim did not arise (according to the affidavit of Dr. Foote) and could not have arisen until October of 1998. That is, Poland could not have brought his *Ford* claim any earlier, and certainly not in his first federal petition. To have ruled otherwise would essentially foreclose a federal district court from *ever* considering such a *Ford* claim (especially if such claims truly are not ripe unless a death warrant has issued and an execution date is pending).[3] It could "effectively [result] in an unconstitutional suspension of the writ of habeas corpus with respect to *Ford* claims." *Nguyen v. Gibson*, 162 F.3d 600, 604 (10th Cir.1998) (Briscoe, J., dissenting).

In *Nguyen*, the Tenth Circuit treated a petition attempting to raise a *Ford* claim as "second or successive" and refused to authorize its filing under Section 2244(b). *Nguyen*, however, is distinguishable. *See* 162 F.3d at 601 (stressing that Nguyen's case "does not present a situation where

the grounds supporting the *Ford* claim first came to light after the filing of the initial application"). This Court is also aware that other Circuits have treated new *Ford* claims (i.e., those not brought earlier) as falling under AEDPA's gatekeeping requirement. *See In re Davis*, 121 F.3d 952, 955 (5th Cir.1997); *In re Medina*, 109 F.3d 1556, 1563 (11th Cir.1997). No Ninth Circuit opinion, however, has specifically ruled on this issue and therefore—although Respondent reasserts the argument in its Answer of January 22, 1999—this Court will continue to follow its previous interpretation of the Supreme Court's 1998 (post-*Davis* and post-*Medina*) reasoning set forth in *Martinez–Villareal*.[4] In short, AEDPA does not bar this action.

Accordingly, this Court ordered Poland's October 20, 1998 attempted amendment filed as a new habeas action (to which the AEDPA-modified habeas statutes otherwise apply) and stayed the execution if only to examine the colorable *Ford* issues more carefully. *See* Stay Order at 3. This Court found that Poland had presented substantial and unrebutted evidence that he could have had a valid *Ford* claim—i.e., that he was then incompetent to be executed. Specifically, after setting forth his observations and diagnoses, Poland's psychologist opined on October 18, 1998 that "according to the standards set forth in Arizona Revised Statutes § 4021, Mr. Michael Poland is currently incompetent to be executed." Amended Petition, Exh. A at 5, ¶ 33.

Faced with the same evidence, Arizona's courts had applied procedural rules set forth in ARS §§ 13–4021 and 13–4024, and had denied a motion for examination of competency. Arizona's trial courts had refused to allow even a hearing on competency. The Arizona Supreme Court, with two

---

3. *See supra* note 1. Petitioners might then attempt to raise multiple unripe and unexhausted claims (claims with only a potential for ever arising) in first petitions, if only to preserve a right to bring such claims later. Such claims would run afoul of *Rose v. Lundy*.

4. Indeed, the Ninth Circuit and Supreme Court refused to vacate this Court's October 20, 1998 stay. *See Stewart v. Poland*, —— U.S. ——, 119 S.Ct. 390, 142 L.Ed.2d 322 (1998).

Justices dissenting, refused to grant a stay to allow further competency proceedings.

This Court basically agreed with the dissenting Justices, found cause and prejudice for the procedural default, and indicated that Poland was entitled to further process. *See* Stay Order at 5–6. After the Ninth Circuit and U.S. Supreme Court refused to vacate the stay, the warrant for execution expired on October 20, 1998 at 3:00 p.m., Arizona time. Thus, Poland has never had a state competency hearing; there are no state court or administrative findings for this Court to review. Notably, Respondent has again applied for an execution warrant. That application is currently pending before the Arizona Supreme Court.

## III. DISCUSSION

■ Respondent argues that Poland's *Ford* claim is no longer ripe because the warrant for execution expired on October 20, 1998. *See Herrera v. Collins,* 506 U.S. 390, 406, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (reasoning that "the issue of sanity [for a *Ford* claim] is properly considered in proximity to the execution"); *Martinez–Villareal,* 118 S.Ct. at 1622 ("respondent's *Ford* claim was dismissed as premature, not because he had not exhausted state remedies, but because his execution was not imminent and therefore his competency to be executed could not be determined at that time"); *Martinez–Villareal v. Stewart,* 118 F.3d 625, 627 (9th Cir.1997) ("the determination of whether an inmate is competent to be executed cannot be made before the execution is imminent, i.e., before the warrant of execution is issued by the state"), *aff'd,* 523 U.S. 637, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998); *Calderon v. United States District Court (Kelly),* 127 F.3d 782, 787 (9th Cir.1997) ("[I]f Kelly's real point is that a presently incompetent person should not be executed, that claim is premature. It can only be brought up if and when an order for his execution issues."), *cert. denied,* —— U.S.

——, 118 S.Ct. 1395, 140 L.Ed.2d 653 (1998), *overruled on other grounds,* 163 F.3d 530, 536 (9th Cir.1998) (en banc), *petition for cert. filed,* 67 USLW 3459 (Jan. 4, 1999).

Respondent asks the Court to dismiss the First Amended Petition without prejudice. Once a new execution date is set (and the claim is again ripe), the State could hold a competency hearing in state court. Only then, Respondent contends, would the *Ford* claim be ripe and exhausted for purposes of federal habeas review.

The Court faces a conundrum. Under the cases cited above, a *Ford* competency claim is ripe for adjudication only when an execution is "imminent." Some language in these cases appears to indicate that such claims are not ripe unless a warrant has issued and an execution date is actually pending. If that language is taken literally, however—because a federal stay of execution granted anytime close to the execution date would cause the warrant to expire—the stay would itself moot the reason for the stay. The circular logic goes like this: (1) there must be a pending execution date before a *Ford* claim is ripe; (2) staying the execution to consider a *Ford* claim effectively vacates the execution date; thus, (3) the *Ford* claim would not be ripe. Moreover, "if a stay had not been issued, execution of the petitioner would itself have mooted the claim." *Martinez–Villareal v. Stewart,* No. Civ. 98–446–TUC–WFN (D.Ariz. Oct. 28, 1998), Order at 8, *vacated sub nom.,* No. 98–71393 (9th Cir. Dec. 10, 1998) (unpublished order). Further, if a petition were dismissed as unripe, the state would then presumably obtain a new execution date (as Respondent seeks in the instant case). The execution would again be "imminent," the claim would again ripen, only to be subject to another stay that would render the petition unripe.

M.C. Escher comes to mind.[5] So do Zeno's paradoxes, as they often do in

5. In particular, the Dutch graphic artist's lithograph "Ascending and Descending" is an appropriate analogy. The illustration is of monks climbing or descending a never ending stairway.

death penalty jurisprudence. *See Vargas v. Lambert*, 159 F.3d 1161, 1172 n. 1 (9th Cir.) (Kleinfeld, J., dissenting) (describing paradox as characteristic of lengthy death penalty cases), *stay of execution vacated*, —— U.S. ——, 119 S.Ct. 313, 142 L.Ed.2d 274 (1998). One paradox postulates that an arrow never meets its target because it must first cover half the distance, then half the remainder, and so on, ad infinitum.

Taken literally then, Respondent's interpretation—that a *Ford* claim is only ripe if an actual scheduled execution date is pending—would mean most *Ford* claims (those arising after a first federal habeas petition) could never be heard, regardless of the effect or non-effect of AEDPA on the claims. This is so partially because of the nature of a *Ford* claim itself—a petitioner's "competency" is a moving target.[6] As Judge Kleinfeld noted in his *Vargas* dissent:

> Because it necessarily took time, there was an interval of time between the mental examinations the state courts considered and the scheduled execution. That opened the door, as it necessarily does in any death penalty case, to an affidavit from an expert witness that something had occurred, or might have occurred, in the time interval.

159 F.3d at 1172 n. 1. That is, a determination of a petitioner's competency (measured in proximity to a previous execution date) is indeed moot, although perhaps not irrelevant, to a determination of competency at another time (in proximity to a different execution date) several months later. Thus, the question whether Poland was competent to be executed on October 20, 1998 is inconsequential; the important question is his *current* competency.

Of course, Escher's and Zeno's logic is fallacious. Zeno's arrow does stop. It does not, however, have to stop unconstitu-tionally. The logic is subject to several possible challenges.

First, a stay does not have to issue. It is certainly possible for a federal court to perform a habeas review while an execution date is pending, but after state remedies are exhausted. This is a difficult option; it could force a hasty review of a lengthy record in only a few hours. The stay is usually issued to facilitate needed deliberation where error is irreversible. But this situation is not now before the Court because a stay *has* issued, and because there are no state evidentiary proceedings (either for past or current competency) to review.

Second, the Court could rule that Poland's *Ford* claim is ripe because his execution is indeed "imminent."[7] In this regard, it could be significant that Respondent has *applied for* a new execution warrant. That application is pending, and thus in a very real sense Poland's execution is "imminent." This option, however, is in reality fictitious—the application has been pending since December of 1998 and it is unclear when, if ever, the warrant will issue. The Arizona Supreme Court presumably feels at least some constraint by the scope of this Court's October 20, 1998 Stay Order (concluding that "[t]he Motion for Stay of Execution is GRANTED, pending further proceedings to determine the *Ford* claim").

Third, the Court could proceed with a federal evidentiary hearing to determine Poland's competency as of October 20, 1998. That question was ripe and was "fairly presented" to the Arizona Supreme Court. *See Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). As indicated earlier, however, that question is largely moot and of only limited relevance to the real question of *current* competence.

---

6. *Ford* claims necessarily arise only after conviction and sentence. *See Ford*, 477 U.S. at 425–26, 106 S.Ct. 2595 (Powell, J., concurring). The conundrum thus might not be limited to claims such as Poland's which could involve "temporary incompetence" where the impending execution itself may factor into causing the alleged incompetence.

7. Alternatively, the "capable of repetition yet evading review" doctrine might apply.

More importantly, however, even if the question of current competence is ripe, that question has not been *exhausted*. In this context, although clearly related, "ripe" is not synonymous with "exhausted." Here, where there have been no evidentiary proceedings in state court (and therefore no evidentiary record for federal habeas review), it would implicate principles of judicial federalism for this Court to perform the largely state-court function of determining competency. *Cf. Vargas*, 159 F.3d at 1171 (staying execution to permit state court to conduct competency hearing in "next friend" case), *stay vacated*, —— U.S. ——, 119 S.Ct. 313, 142 L.Ed.2d 274 (1998).

This appears to be even more so after AEDPA. True, the Supreme Court in *Ford* indicated that de novo federal fact-finding was appropriate. *See Ford*, 477 U.S. at 418, 106 S.Ct. 2595. That indication, however, was based upon a finding of facially inadequate state court procedures as measured by factors enunciated in *Townsend v. Sain*, 372 U.S. 293, 312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) and set forth in the former (pre-AEDPA) 28 U.S.C. § 2254(d)(2):

> In light of the clear need for trustworthiness in any factual finding that will prevent or permit the carrying out of an execution, we hold that Fla.Stat. § 922.07 (1985 and Supp.1986) provides inadequate assurances of accuracy to satisfy the requirements of *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Having been denied a factfinding procedure "adequate to afford a full and fair hearing" on the critical issue, 28 U.S.C. § 2254(d)(2), petitioner is entitled to an evidentiary hearing in the District Court, *de novo*, on the question of his competence to be executed. *Townsend v. Sain, supra*, at 312, 83 S.Ct. 745.

477 U.S. at 417–18, 106 S.Ct. 2595.

*Ford's* holding, however, might be tempered by AEDPA's removal of the *Town-*

send factors. The Court would then face difficult questions regarding the effect of new post-AEDPA Sections 2254(d) and (e). For example, the language of Section 2254(e)(2) appears to limit the availability of federal hearings even more so than under pre-AEDPA habeas law. *See* 28 U.S.C.A. § 2254(e)(2) (West Supp.1998) (stating that "the court *shall not* hold an evidentiary hearing on the claim unless the applicant shows [certain factors]") (emphasis added). Moreover, even though this Court did find cause and prejudice in its Stay Order, that finding dealt with Poland's competence on October 20, 1998. Further, this Court has not found that Arizona's statutory scheme is facially unconstitutional (a claim which itself has not been exhausted), even if there might be an arguably potential issue. *Compare* ARS § 13–4024.A (deeming late a motion for examination filed fewer than forty-five days before a scheduled execution) *with* ARS § 13–706 (stating that "the time for execution shall be fixed for thirty-five days after the state's motion is granted").

In any event, it is far from clear what would be gained by a federal hearing on Poland's current competence. As Respondent argues, even assuming a federal hearing resulted in a determination that Poland is competent, this Court could not order an execution. The only result would be to lift the stay. Similarly, if a federal hearing determined that Poland is incompetent it would only mean that Arizona could not execute Poland until he "regained" competency. *See* ARS § 13–4023B; *Ford*, 477 U.S. at 426 n. 5, 106 S.Ct. 2595 (stating that "if petitioner is cured of his disease, the State is free to execute him"). This Court is unaware of any authority it has to order a petitioner committed to a state hospital. Either way, Respondent would need to obtain a new execution warrant, potentially returning the *Ford* process to its circular beginning. And, regardless, it remains clear that Poland's *current* competence has not been exhausted.[8]

---

8. Perhaps the exhaustion question would be different if there were an evidentiary record, even if a stay had issued. Again, the Court does not face that situation here.

Respondent offers a practical solution to this logical puzzle. In each of its filings and during the December 7, 1998 hearing, Respondent represents that it will not oppose a competency hearing in state court (and in fact will request that such a hearing be held prior to Poland's rescheduled execution date). *See* Answer of January 22, 1999, at 6 ("Respondents will not oppose a 'late' or 'successive' [under Arizona law] request for a competency hearing in state court if Poland provides an affidavit from a psychiatric expert calling into question Poland's competency,[9] and in fact, Respondents will request that such a hearing be held 2 or 3 weeks prior to Poland's rescheduled execution date."); *see also* Respondent's November 25, 1998, Response to Order Requesting Additional Briefing, at 3. The Court agrees with Respondent that this proposed solution will address the Court's concern that Poland not be executed unconstitutionally. Moreover, this solution will comport with proper notions of judicial federalism.[10] As Respondent's counsel stated during the hearing, Arizona has no interest in executing an incompetent person in violation of *Ford.* If this matter returns to this Court after such proceedings, the Court will be in a better position to perform its role under federal habeas statutes.

## IV. CONCLUSION

For the foregoing reasons, because the claim of Poland's current competence has not been exhausted, and upon Respondent's representations made to this Court regarding possible further proceedings in state court,

IT IS HEREBY ORDERED that the First Amended Petition is DISMISSED without prejudice for lack of exhaustion.

IT IS FURTHER ORDERED that the Stay entered on October 20, 1998 is LIFT-ED. The Clerk of the Court is instructed to close this action.

---

**9.** Poland appears to already have such an affidavit.

**10.** The Court is not persuaded by Poland's argument that Respondent should not have "two bites at the apple." Respondent is not estopped from having a state hearing on current competence merely because it improperly refused a hearing on past competence.