F. Thomas SCHORNHORST, Alan M. Freedman, and Carol R. Heise, Counsel, as next friend on behalf of D.H. Fleenor X-Row (Doc No. 14942), P.O. Box 41, Michigan City, Indiana 46360, Plaintiffs,

v.

Ron ANDERSON, Superintendent, Indiana State Prison, P.O. Box 41, Michigan City, Indiana, Defendant.

No. IP–99–1851–C H/G.

United States District Court, S.D. Indiana, Indianapolis Division.

Dec. 7, 1999.

Alan M. Freedman, Midwest Center for Justice, Ltd., Chicago, IL, for Plaintiffs.

Geoffrey Slaughter, Michael Hurst, Office of Atty. Gen., Indianapolis, IN, for Defendant.

## ENTRY ON PETITION FOR WRIT OF HABEAS CORPUS AND RELATED EMERGENCY MOTIONS

HAMILTON, District Judge.

The State of Indiana has sentenced D.H. Fleenor to die during the time after 12:01 a.m. and before the hour of sunrise on December 9, 1999, a window of time beginning about 30 hours from now. In this action, filed first thing this morning, December 7, 1999, three attorneys who have represented Fleenor in past proceedings have filed a petition for a writ of habeas corpus seeking to act as Fleenor's "next friends." The petitioner-attorneys seek an emergency stay of the imminent execution, an order authorizing discovery and payment of expenses, and an evidentiary hearing on the issue whether Fleenor is mentally competent to be executed. See *Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) (Eighth Amendment prohibits execution of insane prisoners). The respondent has filed a response, and the court held a hearing this afternoon in which the attorney-petitioners and counsel for the respondent participated. Fleenor was notified of the hearing and chose not to participate.

As explained below, the court denies the petitioner-attorneys' request for an emergency stay of execution and all other forms of relief, and dismisses their petition for lack of jurisdiction. Under the law, Fleenor is presumed sane, and there is no professional opinion to the contrary. A substantial volume of communications between Fleenor and prison staff shows that

Fleenor knows he is about to be executed and why. The conclusory lay opinion to the contrary is not a sufficient substantial threshold showing of insanity to justify the further litigation being sought here. The petitioner-attorneys have not made a sufficient threshold showing that Fleenor is mentally incompetent. That failure means both that they are not entitled to act as his "next friends" in seeking relief, and that relief is not warranted on the merits of the *Ford* claim.

### Factual and Procedural Background

On December 12, 1982, Fleenor murdered his mother-in-law and her husband, Nyla Jean Harlow and Bill Harlow. Fleenor committed the murders by shooting the Harlows in their home in front of his estranged wife Sandra Sedam, her son, and two other grandchildren of the Harlows. Armed with a gun, Fleenor then took Sandra and the children to Tennessee, where he barricaded the family in a house. After a stand-off, Fleenor was taken into custody.

Fleenor was charged with murder in Jefferson County, Indiana, but the trial was moved to Johnson County. Fleenor was found guilty of both murders. The jury recommended the death penalty, and on January 4, 1984, the trial judge sentenced Fleenor to death for both murders. Fleenor's convictions and sentences were upheld on direct appeal, *Fleenor v. State*, 514 N.E.2d 80 (Ind.1987), in a post-conviction challenge in state court, *Fleenor v. State*, 622 N.E.2d 140 (Ind.1993), and in federal habeas review, *Fleenor v. Farley*, 47 F.Supp.2d 1021 (S.D.Ind.1998), *aff'd*, *Fleenor v. Anderson*, 171 F.3d 1096 (7th Cir.1999). The Supreme Court of the United States has denied petitions for writs of certiorari in each of the three proceedings.

The Supreme Court of the United States denied Fleenor's most recent petition on October 4, 1999. The Supreme Court of Indiana then issued an order on October 25, 1999, setting the date of Fleenor's execution for December 9, 1999, before the hour of sunrise.

Fleenor has refused all contact with the petitioner-attorneys since approximately October 25, 1999, when they informed him that the new execution date had been set and when they notified him of the deadline for petitioning the Governor of Indiana for clemency. Under the schedule, the Indiana Parole Board provided a Petition for Clemency form to Fleenor on October 27, 1999, and the deadline for submitting the petition was November 3, 1999. The deadline for submitting additional written materials, such as letters from family and friends, was November 17, 1999. The Parole Board scheduled an interview with Fleenor at the Indiana State Prison for November 24, 1999, and a public hearing in Indianapolis on November 29, 1999, with a Board vote on a recommendation to the Governor scheduled for November 30, 1999.

On November 3, 1999, petitioners Alan M. Freedman and F. Thomas Schornhorst filed with this court in Cause No. IP 94–717–C (the earlier habeas action) an emergency petition pursuant to 21 U.S.C. § 848(q)(8) to appoint them as counsel for Fleenor in state clemency proceedings. The emergency petition reported that Fleenor had refused to communicate with these attorneys after the denial of the writ of certiorari. Freedman and Schornhorst stated that they believed in good faith that Fleenor was not competent to be executed. The attorneys sought emergency action because of the Parole Board deadlines. The attorneys also reported that they were filing a Petition for Clemency on Fleenor's behalf.

On November 4, 1999, the undersigned judge denied in a written order the emergency petition for appointment of counsel. The court found that it had the power to grant the requested relief but that it should not do so in view of Fleenor's clearly expressed refusal to have these attorneys represent him. The court explained:

The habeas proceedings have come to a close. Mr. Fleenor himself has not indicated any desire to proceed with clemen-

cy proceedings. This court sees no reason to force such proceedings upon him, let alone to force upon him lawyers he does not want. The fact that Mr. Fleenor has been uncommunicative with his previous counsel is, in the court's view, too thin a reed to support a claim that Mr. Fleenor is "not competent" to be executed, or that he needs to have counsel he does not want for a proceeding he has shown no interest in pursuing.

Order at 3 (copy attached as Exhibit A).

On November 24, 1999, the Indiana Parole Board met at the facility where Fleenor is held in custody. Fleenor had not filed a clemency petition, which would be reviewed by the Parole Board, and he refused to appear before the Parole Board for an interview on that date. A member of the Parole Board met with Fleenor in his cell to urge him to talk to the Parole Board, but Fleenor refused.

The petitioner-attorneys then asked the Indiana Parole Board and the Department of Correction for records relevant to Fleenor's psychological and medical condition. Both agencies refused the request. On November 22, 1999, the petitioner-attorneys asked the Supreme Court of Indiana to order the agencies to provide them with copies of "all existing psychological records, including psychiatric interviews, evaluations, diagnoses, treatment, intervention, progress notes or summaries," "all medical records," "all medications records," and "all observation logs, records, notes or reports." The Supreme Court of Indiana issued an order on November 23, 1999, directing the Department of Correction to produce these records no later than November 24, 1999. The records were sent by Federal Express on that date.

On December 1, 1999, the petitioner-attorneys filed a petition with the Supreme Court of Indiana requesting authority to file a successive petition for post-conviction relief. The petition asserted the belief that Fleenor is not competent to be executed, relying on *Ford v. Wainwright, supra.* The petition also argued that Indiana should adopt a higher standard of compe-

tence for execution of prisoners sentenced to death. The petitioner-attorneys supported their petition with copies of records produced from the Indiana Department of Correction, and with affidavits from Father Joseph Lanzalaco and petitioner-attorney Carol Heise.

The State of Indiana opposed the petition in a filing submitted December 3, 1999. The state argued that the petitioner-attorneys lacked standing to seek relief on behalf of Fleenor. The state also argued that the available evidence was not sufficient to warrant a hearing, let alone to rebut the presumption of sanity that applies at this stage.

Last night, the evening of December 6, 1999, the Supreme Court of Indiana issued its order denying petitioner-attorneys' request for a stay of execution. The court found that the information submitted "does not adequately challenge the presumption that Fleenor is not insane, and we thus conclude that the pleadings conclusively show that the petitioner is entitled to no relief." Order at 4 (copy attached as Exhibit B). The court further found that the petitioner-attorneys did not have standing to act on Fleenor's behalf, especially in light of evidence showing that Fleenor has repeated on many occasions in the last six weeks that he does not want these attorneys to represent him any further. The court therefore denied the request to authorize filing of a successive petition for post-conviction relief and denied the request to stay the execution.

The petitioner-attorneys filed their petition with this court this morning, although they have kept the court staff advised of their intentions for several days, and both the petitioner-attorneys and the attorneys for respondent have provided courtesy copies of their filings in the Supreme Court of Indiana.

### The Issues

The court considers first whether the instant petition is a successive petition subject to the requirements of 28 U.S.C.

§ 2244, such that permission to file must first be sought and obtained from the United States Court of Appeals. The court then turns to whether the *Ford* claim asserted in this petition has been exhausted or is the subject of procedural default. The court then turns to the applicable standards, and finally addresses the closely related issues of the petitioner-attorneys' standing to seek relief and the merits of their claim for relief on behalf of Fleenor.

## I. *Successive Petition?*

■ Fleenor's original federal petition for a writ of habeas corpus has been fully adjudicated and dismissed with prejudice. The petition now before the court raises an entirely new claim that was not part of the prior petition. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides in part that a claim presented in a second or successive habeas corpus application under section 2254 shall be dismissed unless the applicant can satisfy certain standards set forth in 28 U.S.C. § 2244(b)(2). The AEDPA further provides that, "[b]efore a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A). If the Court of Appeals does not authorize such consideration, the district court must dismiss the application for lack of jurisdiction. *Nunez v. United States,* 96 F.3d 990, 991 (7th Cir.1996) (applying same standard to successive claim under § 2255).

Petitioner-attorneys contend that the Supreme Court's decision in *Stewart v. Martinez–Villareal,* 523 U.S. 637, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998), shows that they were not required to obtain authorization from the Court of Appeals pursuant to § 2244(b) before filing this new petition. In *Martinez–Villareal,* the Supreme Court of the United States held that a successive petition asserting a *Ford* claim of incompetence to be executed was not subject to the requirements of § 2244(b), at least where the claim had been raised in the prisoner's original petition when it was not ripe and had been dismissed without prejudice as not yet ripe. 523 U.S. at 643–45, 118 S.Ct. 1618. Respondent contends the Supreme Court distinguished that situation from this one, where the prisoner did not raise an unripe *Ford* claim in his original petition. No *Ford* claim has ever been asserted in a federal court on behalf of Fleenor prior to this action.

In *Nguyen v. Gibson,* 162 F.3d 600, 601–02 (10th Cir.1998), a majority of a panel of the Tenth Circuit agreed with respondent's reading of *Martinez–Villareal,* at least where the *Ford* claim was based entirely on facts known when the prisoner filed his first petition. Judge Briscoe dissented, arguing that *Martinez–Villareal* should not be interpreted to make the prisoner's ability to present a *Ford* claim to a federal district court depend on whether the prisoner had asserted the same claim in an earlier petition when it was not ripe and had not been exhausted in state court, and when its presence would subject the entire petition to dismissal under *Rose v. Lundy,* 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) (district court must dismiss mixed petition). See 162 F.3d at 603 (Briscoe, J., dissenting). In *Poland v. Stewart,* 41 F.Supp.2d 1037, 1039 (D.Ariz. 1999), Judge King agreed with Judge Briscoe's analysis of the general issue and held that a petition raising a *Ford* claim did not amount to a "successive petition" subject to § 2244(b), at least where, as distinct from the situation in *Nguyen,* the *Ford* claim was based on new evidence.

■ Petitioner-attorneys have based their *Ford* claim on Fleenor's behalf on both old (prepetition) and recent (last six weeks) evidence, putting this case factually between *Poland* and *Nguyen.* Without more specific guidance from the Supreme Court or the Seventh Circuit on this issue, this court is not persuaded by respondent's argument that a prisoner's ability to present a *Ford* claim to a district court shortly

before a scheduled execution should depend on whether the prisoner had—or could have—included an unripe, unexhausted *Ford* claim in an earlier petition. That reading of § 2244(b) would surely create a powerful and strange incentive to raise a claim at a time when it must be dismissed. Accordingly, the court concludes that § 2244(b) does not preclude this court's jurisdiction over the new petition in this case.[1]

## II. *Exhaustion and Procedural Default?*

Federal constitutional claims in a federal habeas petition must be fairly presented to the state courts and fully exhausted there before a federal court may consider them on the merits, subject to certain narrow exceptions. In this case, the petitioner-attorneys have fairly presented the federal constitutional claims to the Indiana courts, and no further review is available there. The Supreme Court of Indiana held yesterday that a *Ford* claim may be addressed in a post-conviction proceeding, but that the new *Ford* claim is subject to the requirement in Indiana Post–Conviction Rule 1(12)(b) of first obtaining authorization from the Supreme Court of Indiana before a successive petition for post-conviction relief is authorized. In denying relief, the Supreme Court of Indiana made clear that no further proceedings were possible in state court: "This order is not subject to rehearing under Indiana Appellate Rule 11, and the Clerk is directed to certify this order as final." Order at 5. The Supreme Court of Indiana also addressed the federal constitutional claim on the merits, so there is no hint of procedural default on the *Ford* claim. Accordingly, this court concludes that petitioner-attorneys have fairly presented the *Ford* claim to the state courts and have exhausted the claim before the state courts.

## III. *Standards*

In reviewing the claims of petitioner-attorneys, this court applies the standards set forth in the AEDPA. See 28 U.S.C. § 2254(d). Fleenor filed his original federal habeas petition before the effective date of the AEDPA, so the new standards did not apply to that petition. See *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Fleenor v. Farley,* 47 F.Supp.2d at 1027 n. 3. In this petition, however, the petitioner-attorneys are raising an entirely new claim. The new petition cannot reasonably be deemed an amendment to the prior petition, which has been fully adjudicated and dismissed with prejudice. Accordingly, the petitioner-attorneys agree that the new standards of the AEDPA apply. Cf. *Johnson v. United States,* 196 F.3d 802, 803 (7th Cir.1999) (AEDPA standards apply to successive § 2255 petitions filed by prisoner who filed first petition before effective date of AEDPA). Under those standards, this court may not grant relief:

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The state court proceeding in question here is the petition for leave to file a successive post-conviction petition in state

---

1. A *Ford* claim would not appear to satisfy the criteria that a claim must meet to receive permission from a Court of Appeals under § 2244(b). Even where the claim would be based on new facts that could not have been discovered earlier, the facts could not be "suf- ficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." See 28 U.S.C. § 2244(b)(2)(B).

court. That proceeding did not involve any evidentiary hearing; it did involve an adjudication on the merits of the asserted *Ford* claim. The Supreme Court of Indiana wrote: "The Court finds that the information in the exhibits submitted by Attorneys, taken as fact, does not adequately challenge the presumption that Fleenor is not insane, and we thus conclude that the pleadings conclusively show that the petitioner is entitled to no relief." Order at 4. The Supreme Court of Indiana also found that the petitioner-attorneys did not have standing to act on Fleenor's behalf in the case.

As this court views the issue presented now, the question is whether the state court's rejection of the petitioner-attorneys' *Ford* claim on behalf of Fleenor, which was adjudicated on the merits, albeit in summary fashion on the pleadings, "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." The standard under § 2254(d)(2) does not come into play here because the state courts made no findings based on a hearing with contested evidence.

## IV. *The Petitioner–Attorneys' Standing to Proceed as "Next Friends"*

The petitioner-attorneys seek relief here on behalf of Fleenor as his "next friends." The federal habeas statute authorizes such proceedings under some circumstances. See 28 U.S.C. § 2242 (application must be "in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf"). Respondent contends that the petitioner-attorneys cannot establish a right to proceed on behalf of Fleenor, and that in the absence of such a showing, they have no standing and the court has no jurisdiction to hear the petition.

In *Whitmore v. Arkansas,* 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990), the Supreme Court of the United States laid out the framework for deciding this issue. In that case, Whitmore was a death row prisoner who tried to intervene in the case of another man sentenced to death (Simmons) and to demand as his "next friend" that the Arkansas Supreme Court review the validity of Simmons' death sentence. The state court rejected the effort, and Whitmore sought review in the Supreme Court of the United States. The Supreme Court recognized in *Whitmore* that a person may have standing as a next friend to bring a habeas petition. *Id.* at 163–64, 110 S.Ct. 1717. The Court cautioned, however, that " 'next friend' standing is by no means granted automatically to whomever seeks to pursue an action on behalf of another." *Id.* at 163, 110 S.Ct. 1717. The following prerequisites must be present in order to have standing as a next friend in a federal habeas case:

> First, a "next friend" must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action. Second, the "next friend" must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate and it has been further suggested that a "next friend" must have some significant relationship with the real party in interest. The burden is on the "next friend" clearly to establish the propriety of his status and thereby justify the jurisdiction of the court.

*Id.* at 163–64, 110 S.Ct. 1717 (citations omitted). Relying on findings by the Arkansas Supreme Court that the real party in interest—prisoner Simmons—was mentally competent, the Supreme Court concluded in *Whitmore* that the petitioner did not have standing to bring a next friend habeas petition. *Id.* at 165–66, 110 S.Ct. 1717.

The petitioner-attorneys here maintain that they have standing to bring the *Ford* claim on Fleenor's behalf because Fleenor is not mentally competent to bring the claim on his own behalf. The petitioner-attorneys contend that Fleenor suffers from a mental disease that renders him

without the capacity to understand his legal options or to make a rational choice among them. Additionally, the petitioner-attorneys maintain that Fleenor does not rationally understand the fact that he is about to be executed or the reason why he is to be executed.

The court addresses below the issue of Fleenor's mental competence, and finds that petitioner-attorneys have not made a sufficient prima facie showing that Fleenor is incompetent. Nevertheless, given the stakes, the urgency of the matter, and the immediacy of further review by higher courts, the court believes it is prudent to address the two other prerequisites for next friend status recognized in *Whitmore.* An individual bringing an action as a next friend must be "truly dedicated to the best interests of the person on whose behalf he seeks to litigate" and should have a "significant relationship with the real party in interest." *Id.* at 163–64, 110 S.Ct. 1717. These requirements are met here.

■ The court recognizes that Fleenor has recently stated on numerous occasions that he does not want these attorneys to act as his attorneys or to represent him in any manner. Fleenor's current desire regarding legal representation, however, does not refute the fact that the petitioner-attorneys have all had a substantial relationship with him. Petitioner F. Thomas Schornhorst has served as Fleenor's attorney and represented his interests off and on for over ten years. Petitioners Alan Freeman and Carol Heise have served as Fleenor's attorneys since 1994. The petitioner-attorneys are familiar with both the facts and the procedural history regarding Fleenor's legal actions. See *In re Cockrum,* 867 F.Supp. 494, 495 (E.D.Texas 1994) (recognizing that prisoner's former attorney had a significant relationship with the prisoner for purposes of next friend standing because attorney had acted on behalf of the prisoner in prior legal proceedings); but cf. *Davis v. Austin,* 492 F.Supp. 273, 275 (N.D.Ga.1980) (finding that neither ordained minister nor cousin of prisoner had standing to bring an action

as next friend of the prisoner because of their lack of contact with the prisoner).

The petitioner-attorneys are also sufficiently dedicated to Fleenor's best interests. As the Supreme Court explained in *Whitmore,* the "limitations on the 'next friend' doctrine are driven by the recognition that 'it was not intended that the writ of habeas corpus should be availed of, as matter of course, by intruders or uninvited meddlers, styling themselves next friends.'" 495 U.S. at 164, 110 S.Ct. 1717, citing *United States ex rel. Bryant v. Houston,* 273 F. 915, 916 (2d Cir.1921); see also, *T.W. and M.W. v. Brophy,* 124 F.3d 893, 897 (7th Cir.1997) (noting that a court may sometimes appoint a professional who has worked with a child as her "next friend," but recognizing that next friend standing must be limited to prevent filings by "purely ideological friends" who have no substantial relationship with the real party in interest). These petitioner-attorneys may not fairly be seen as intruders attempting to meddle in Fleenor's affairs in an effort to advance their own political agenda. Rather, it is clear to the court that the petitioner-attorneys in bringing these claims are trying to act in what they believe in good faith to be Fleenor's best interests.

## V. *Merits of the Ford Claim*

This is a case where the merits of the underlying claim are closely intertwined with the court's jurisdiction because of the issue of the petitioner-attorneys' standing. If Fleenor were mentally incompetent, then the petitioner-attorneys would be entitled to act as his "next friends," and relief under *Ford* would be appropriate. If Fleenor is mentally competent, then the petitioner-attorneys have no standing to seek relief, and relief is not warranted on the merits.

The critical starting point here is determining what is "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Supreme Court held in

*Ford v. Wainwright* that the "Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane." 477 U.S. at 409–10, 106 S.Ct. 2595. That portion of the opinion by Justice Marshall commanded a majority of the court. That much is "clearly established" federal law for purposes of habeas jurisprudence. The following portions of Justice Marshall's opinion, which addressed the procedures that apply to resolve claims of insanity by prisoners facing execution, reflected the views of four Justices. Those portions of Justice Marshall's opinion stated several general principles that should apply, but also left to the states "the task of developing appropriate ways to enforce the constitutional restriction upon its execution of sentences. It may be that some high threshold showing on behalf of the prisoner will be found a necessary means to control the number of nonmeritorious or repetitive claims of insanity." 477 U.S. at 416–17, 106 S.Ct. 2595 (plurality opinion).

■ The fifth and decisive vote in favor of the judgment remanding for further consideration of the new claim was cast by Justice Powell, who wrote separately. His opinion reflects the narrowest grounds for the Court's judgment and is thus controlling on the state courts and lower federal courts. See *Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977), citing *Gregg v. Georgia*, 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (opinion of Stewart, Powell, and Stevens, JJ.).

Justice Powell noted that the Court had left two important questions unresolved. The first was "the meaning of insanity in this context," which the plurality did not address. The second was "the procedures States must follow in order to avoid the necessity of *de novo* review in federal courts" under the then-governing language of 28 U.S.C. § 2254(d), upon which Justice Powell disagreed with the standards stated by Justice Marshall and the plurality. 477 U.S. at 418, 106 S.Ct. 2595 (Powell, J., concurring in the judgment).

On the first question, Justice Powell adopted the narrowest standard of insanity recognized in the law: "I would hold that the Eighth Amendment forbids the execution only of those who are unaware of the punishment they are about to suffer and why they are to suffer it." *Id.* at 422, 106 S.Ct. 2595.

With respect to procedures for resolving claims of such insanity, Justice Powell pointed out that a petitioner must already have been judged competent to stand trial, or his competency must have been sufficiently clear as not to raise a serious question for the trial court. *Id.* at 426, 106 S.Ct. 2595. "The State therefore may properly presume that petitioner remains sane at the time sentence is to be carried out, and may require a substantial threshold showing of insanity merely to trigger the hearing process." *Id.* (footnote omitted).

Since the Supreme Court decided *Ford,* it has not offered significant further guidance as to either the standard of "insanity" that applies or the procedures required, including the "threshold" showing needed to trigger a constitutionally required hearing process. See, *e.g., Rector v. Bryant,* 501 U.S. 1239, 1241–42, 111 S.Ct. 2872, 115 L.Ed.2d 1038 (1991) (Marshall, J., dissenting from denial of certiorari) (disagreeing with standard of insanity adopted by Justice Powell in *Ford* ); *Penry v. Lynaugh,* 492 U.S. 302, 333, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) (citing Justice Powell's opinion in *Ford* as controlling).

■ On the merits of the claim the petitioner-attorneys seek to assert here, the court starts with the presumption that Fleenor is competent to be executed under the *Ford* standard. He was found competent to stand trial. His attorneys in the original trial tried to establish a defense of insanity, but none of the psychiatrists or psychologists who examined Fleenor came to the opinion that he met the legal standard of insanity. Fleenor's attorneys tried to persuade the jury that the verdict should be guilty but mentally ill, and they

offered some limited evidence to support that defense. They were not able to persuade the jury. Fleenor testified in the penalty phase of his trial, and there is no indication that his testimony raised any issue about his mental health that would suggest he came close to meeting the *Ford* standard. That is not to say that Fleenor is completely "normal." The jury heard evidence about diagnoses of antisocial personality disorder and a suggestion that he murdered the Harlows as part of a "transient psychotic episode" induced by stress, alcohol, and drugs. The jury also heard evidence that Fleenor expected he would receive a long prison sentence for the murders, and that he did not know when he was planning the murders that Indiana had enacted the death penalty. See *Fleenor v. Farley*, 47 F.Supp.2d at 1025–26.

What evidence has been presented to rebut the presumption of sanity? With the benefit of access to Fleenor's prison records, ordered by the Supreme Court of Indiana on November 23, 1999, the petitioner-attorneys have come forward with evidence about his condition at various times in prison. The records show that Fleenor attempted suicide in prison in 1990, roughly nine years ago. See Successive Post–Conv. Ex. 2. A psychiatric note dated June 20, 1991, states: "This man was mentally ill when the crime was committed. His recent mental relapse confirms my idea." Successive Post–Conv. Ex. 4. A psychiatric note dated July 30, 1992, stated that Fleenor's "earlier days on death row were very disruptive until he was given a major tranquilizer (Navane). This has removed his paranoia and permitted him to mature." Successive Post–Conv. Ex. 3. The same note described Fleenor as showing "no undue depression," that his thinking was orderly and goal directed, that psychological tests showed no unusual thoughts or fantasies, and that "with the help of Thiothixene, 10 mg daily, this man shows no overt signs of mental illness." *Id.* Another note dated November 25, 1992, states "this man has trouble with paranoia," and he "has been acutely psychotic a couple of times on Xrow. Na-

vane 10y daily & A—— 25y Bid keep him from those conditions." Successive Post–Conv. Ex. 5.

Most recently, in terms of professional evaluation, a psychologist's note from November 1, 1999, states:

> Subjective: Met with patient secondary to Custody referral ("He's acting a bit depressed"). "My lawyer screwed me and it's all political. They got to kill me now, it's politics. If I need to talk with you, I'll let the officers know. I'm okay. I'll send for you."

> Objective: Alert. Oriented x4. Mood euthymic. Affect congruent. No suicidal/homicidal ideation or plan. No disturbance of thought, perception, or cognitive/---- noted.

> A: No diagnosis on Axis I. Stress of incarceration/sentence.

> Plan: Continue supportive sessions as needed by patient.

State's Successive Post–Conv. Ex. A.

The petitioner-attorneys have also submitted the affidavit of Father Joseph M. Lanzalaco, who has served on a contractual basis as the Catholic chaplain at the Indiana State Prison for the last four and a half years. Father Lanzalaco testifies that he has met with Fleenor on a number of occasions, and that during those visits, "I never got the impression that he was a fully sane man. On the contrary, Mr. Fleenor has, on every single occasion, been incoherent. Also, Mr. Fleenor has, on every single occasion, appeared to me to be delusional, paranoid, and very much out of touch with reality." Successive Post–Conv. Ex. 6. Father Lanzalaco testified that Fleenor never indicated "that he understood where he was and why he was there." *Id.* Father Lanzalaco also opined that Fleenor "does not understand why he is being killed and does not understand that he is being killed." *Id.* On November 9, 1999, respondent Anderson, the Superintendent of the Indiana State Prison, sent Father Lanzalaco a letter terminating his

access to death row inmates "due to philosophical differences." *Id.*

Other exhibits before the court report on numerous contacts between Fleenor and prison staff. Assistant Superintendent Tom Steepro reported on a meeting with Fleenor on November 22, 1999. They talked about whether Fleenor should attend the clemency interview with the Parole Board on Wednesday, November 24th. "D.H. responded by saying that even if he got to convince the board to recommend clemency and the Governor granted it, he would be 'copping' to 60 years.'" Successive Post–Conv. Ex. 1 at 1. Fleenor went on to say that his attorneys had "railroaded him," and that he should have been convicted of "nothing more than manslaughter." *Id.* Fleenor made additional comments about his case. See *id.* at 1–2. Just before Steepro left, Fleenor asked, "What do you think I'm going to do?" in terms of whether he would seek clemency. Steepro replied, "Right now I'd say that you won't go." Fleenor said, "That's right. If I have to go across the street, (to the death chamber) I'll do it, but I shouldn't have gotten the death penalty." *Id.* at 2. Steepro continued:

> At that point I told Fleenor that I would be there that night. That I would be the one to read him his death warrant and ask if he had any last words. He said to me, "I'll tell you that this is wrong."

*Id.* at 2.

In an earlier memorandum, Steepro reported to Anderson on a meeting that Fleenor had with Randy Koester of the Department of Correction legal staff and Ray Rizzo, a member of the Indiana Parole Board. Rizzo explained to Fleenor his options about clemency, and Fleenor did not respond to anything Rizzo said:

> He kept his headset on and changed the channels of his television. He gave every impression that he did not hear a thing Mr. Rizzo said. What is funny about that is that as they left he told the officer to be sure to write down that he didn't say, nor did he sign, anything.

The general consensus of opinion is that he heard every word.

Successive Post–Conv. Ex. 1 at 4; see also *id.* at 9.

Additional records of staff encounters with Fleenor show his anger with the attorneys and his awareness of his situation. See Successive Post–Conv. Ex. 1 at 7–8; *id.* at 13–16. In additional notes, on November 1, 1999, Fleenor "refused attorney visit because he said they were liars. He said that he didn't want to die (started to cry) but would walk out that door smiling because he was happy with himself. Told me not to worry about him and that if he needed something that he would contact me." Successive Post–Conv. Ex. 1 at 18. Notes for November 3, 1999, report that Fleenor said he ripped up the clemency papers and threw them away. *Id.* Fleenor also said he wants to tell the news media "the truth about how his attorneys, the judge, and others lied." *Id.* at 18–19; see also *id.* at 20–21. The next day, November 4th, Fleenor wanted to know if he could contact someone in regards to legal matters, and he was offered the telephone but did not use it.

The petitioner-attorneys rely heavily on the report from Chaplain Babbs that "Fleenor feels that god is going to spare him." Successive Post–Conv. Ex. 1 at 10. The petitioner-attorneys also rely heavily on a reported conversation from November 19, 1999, in which Fleenor was informed that if he wanted a news conference, a staff member needed to know by November 22nd. Fleenor responded "that he might reply in a few months." Successive Post–Conv. Ex. 1 at 29.

During the hearing that this court held this afternoon, Assistant Superintendent Steepro reported that Fleenor had initially said he wanted to talk to the undersigned judge but changed his mind when he learned that the hearing would be a telephone conference call including his former attorneys. Fleenor reportedly said something to prison staff about having his new attorney talk to the court. Fleenor did not

identify a new lawyer, however, and there is no indication that any other lawyers are on his horizon.

This evidence, read as a whole, makes a prima facie showing that Fleenor thinks his execution is unfair, and that he is angry and at times withdrawn when confronted with the fact of his scheduled execution. He refuses to communicate with many people on the subject, and he makes bitter or sarcastic remarks about his situation.

The evidence submitted to the Supreme Court of Indiana and to this court does not approach a threshold showing of true incompetence under the *Ford* standard. There is ample evidence that Fleenor knows he is about to be executed, and he knows why—for murdering the Harlows. The fact that Fleenor believes the sentence is unfair does not undermine his sanity.

Under *Ford*, the Indiana court was entitled to begin, and did begin, with the presumption that Fleenor is competent to be executed. See Order at 4. As the Supreme Court of Indiana recognized, the only piece of evidence that tries to address the *Ford* standard directly is Father Lanzalaco's affidavit. As the Indiana court recognized, Father Lanzalaco is not a psychiatrist or a psychologist, and he has not identified any specific behavior or comments by Fleenor that support his conclusory opinion that Fleenor is not competent to be executed. What Father Lanzalaco offers is a conclusory opinion by a layman.

If that is enough to trigger the procedural rights under *Ford*, there is essentially no minimum threshold, and a prisoner or someone claiming to act on his behalf would be entitled to an adversarial, evidentiary hearing under *Ford* essentially upon demand. Such a rule would conflict with the presumption of competence under *Ford* and with the recognition in both Justice Marshall's and Justice Powell's opinions in *Ford* that states have the right to insist on a substantial threshold showing before they undertake the kind of adversarial and evidentiary proceedings that pe-

titioner-attorneys seek in this case. See 477 U.S. at 417, 106 S.Ct. 2595 (Marshall, J.); *id.* at 426, 106 S.Ct. 2595 (Powell, J.).

The State of Indiana is entitled under *Ford* to insist on a substantial threshold showing before the general procedural provisions of the *Ford* opinions would come into play. The opinions in *Ford* did not specify how much of a threshold showing would be necessary, but said it could be "substantial." The Supreme Court of Indiana concluded that the evidence presented to it did not meet such a threshold. The petitioner-attorneys criticize the state court for not articulating a more specific standard, but the state court was not required to do so. Its conclusion that the evidence from petitioner-attorneys was not sufficient is not contrary to clearly established Supreme Court precedent. Neither *Ford* nor any other case lays out a specific standard.

The state court's conclusion also does not amount to an unreasonable interpretation of *Ford*. In light of the *Ford* standard of insanity—the prisoner does not understand that he is about to be executed or why—a "substantial threshold showing of insanity," in Justice Powell's terms, can reasonably be interpreted to require more than a history of some mental illness and a conclusory opinion from a layman that the prisoner is insane. Both the plurality and Justice Powell recognized the prospect of frivolous or unwarranted last-minute attempts to raise an issue of competence to be executed, and both opinions recognized that states could screen out such claims without providing more complete procedural rights.

The petitioner-attorneys argue forcefully that everyone should be absolutely certain a prisoner about to be executed is sane before the execution goes forward. They contend they have not had a fair opportunity to conduct discovery, to subject Fleenor to further psychiatric evaluations, and to subpoena and cross-examine witnesses in a judicial proceeding.

With all respect, that approach turns *Ford* on its head. It would essentially presume any prisoner facing execution is not sane until proven so in an adversarial, evidentiary hearing before a judge. When state courts face *Ford* claims (and this case presents the first *Ford* claim the Indiana court has heard), they are permitted under the Eighth Amendment to try to balance some competing goals. One of those goals is certainly to ensure that a prisoner about to be executed is sane, but the courts may start with the presumption that he is. Another goal, however, is to go forward with punishments with deliberate speed, without undertaking (after many years of direct and collateral review of conviction and sentence) a new and prolonged court proceeding without a substantial showing of good reasons to do so. The Supreme Court of Indiana found in this case that the petitioner-attorneys failed to make a substantial showing calling Fleenor's sanity into question. That finding amounts to a reasonable interpretation of controlling federal law as stated by the Supreme Court of the United States. Without a more "substantial threshold showing of insanity," see *Ford*, 477 U.S. at 426, 106 S.Ct. 2595 (Powell, J., concurring), the petitioner-attorneys are not entitled to further discovery and hearings on Fleenor's sanity.

The result of the state court's finding is both that *Ford* relief would not be justified on the merits and that the petitioner-attorneys do not have standing to proceed as Fleenor's "next friends." Accordingly, the court hereby DENIES the petition for lack of subject matter jurisdiction, DENIES the request for an emergency stay of execution, and DENIES all other relief requested by the petitioner-attorneys. Judgment consistent with this Entry shall now issue. The clerk shall immediately notify the parties and the Court of Appeals of this ruling.