STEWART, DIRECTOR, ARIZONA DEPARTMENT OF
CORRECTION, ET AL. v. MARTINEZ-VILLAREAL

No. 97–300.   Argued February 25, 1998—Decided May 18, 1998

638

REHNQUIST, C. J., delivered the opinion of the Court, in which STEVENS, O'CONNOR, KENNEDY, SOUTER, GINSBURG, and BREYER, JJ., joined. SCALIA, J., filed a dissenting opinion, in which THOMAS, J., joined, *post*, p. 646. THOMAS, J., filed a dissenting opinion, in which SCALIA, J., joined, *post*, p. 648.

*Bruce M. Ferg,* Assistant Attorney General of Arizona, argued the cause for petitioners. With him on the briefs were *Grant Woods,* Attorney General, *pro se,* and *Paul J. McMurdie.*

*Denise I. Young* argued the cause for respondent. With her on the brief were *Paul Bender, Sean D. O'Brien, Fredric F. Kay,* and *Dale A. Baich.*\*

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

In *Ford* v. *Wainwright,* 477 U. S. 399, 410 (1986), we held that "the Eighth Amendment prohibits a State from inflicting the penalty of death upon a prisoner who is insane." In this case, we must decide whether respondent Martinez-Villareal's *Ford* claim is subject to the restrictions on "second or successive" applications for federal habeas relief found in the newly revised 28 U. S. C. § 2244 (1994 ed., Supp. II). We conclude that it is not.

Respondent was convicted on two counts of first-degree murder and sentenced to death. He unsuccessfully challenged his conviction and sentence on direct appeal in the

---

\*Briefs of *amici curiae* urging reversal were filed for the State of California et al. by *Daniel E. Lungren,* Attorney General of California, *George Williamson,* Chief Assistant Attorney General, *Dane R. Gillette,* Senior Assistant Attorney General, *Keith H. Borjon,* Supervising Deputy Attorney General, and *Emilio Eugene Varanini IV,* Deputy Attorney General, and by the Attorneys General for their respective States as follows: *Bill Pryor* of Alabama, *M. Jane Brady* of Delaware, *Alan G. Lance* of Idaho, *Jeffrey A. Modisett* of Indiana, *Carla J. Stovall* of Kansas, *Mike Moore* of Mississippi, *Jeremiah W. Nixon* of Missouri, *Joseph P. Mazurek* of Montana, *Don Stenberg* of Nebraska, *Frankie S. Del Papa* of Nevada, *Michael F. Easley* of North Carolina, *D. Michael Fisher* of Pennsylvania, *Betty Montgomery* of Ohio, *Drew Edmondson* of Oklahoma, *Hardy Meyers* of Oregon, *Mark Barnett* of South Dakota, *Dan Morales* of Texas, *Jan Graham* of Utah, and *William U. Hill* of Wyoming; and for the Criminal Justice Legal Foundation by *Kent Scheidegger* and *Charles L. Hobson.*

Briefs of *amici curiae* urging affirmance were filed for the American Bar Association by *Jerome J. Shestack, Jerold S. Solovy, Barry Levenstam,* and *C. John Koch;* for the American Civil Liberties Union by *Larry W. Yackle* and *Steven R. Shapiro;* for the National Association of Criminal Defense Lawyers by *Edward M. Chikofsky, Mark E. Olive,* and *David M. Porter;* and for the United Mexican States et al. by *John P. Frank* and *José A. Cárdenas.*

Arizona state courts. *Arizona* v. *Martinez-Villareal,* 145 Ariz. 441, 702 P. 2d 670, cert. denied, 474 U. S. 975 (1985). He then filed a series of petitions for habeas relief in state court, all of which were denied. He also filed three petitions for habeas relief in federal court, all of which were dismissed on the ground that they contained claims on which the state remedies had not yet been exhausted.

In March 1993, respondent filed a fourth habeas petition in federal court. In addition to raising other claims, respondent asserted that he was incompetent to be executed. Counsel for the State urged the District Court to dismiss respondent's *Ford* claim as premature. The court did so but granted the writ on other grounds. The Court of Appeals for the Ninth Circuit reversed the District Court's granting of the writ but explained that its instruction to enter judgment denying the petition was not intended to affect any later litigation of the *Ford* claim. *Martinez-Villareal* v. *Lewis,* 80 F. 3d 1301, 1309, n. 1 (1996).

On remand to the District Court, respondent, fearing that the newly enacted Antiterrorism and Effective Death Penalty Act (AEDPA) might foreclose review of his *Ford* claim, moved the court to reopen his earlier petition. In March 1997, the District Court denied the motion and reassured respondent that it had " 'no intention of treating the *[Ford]* claim as a successive petition.' " 118 F. 3d 628, 630 (CA9 1997). Shortly thereafter, the State obtained a warrant for respondent's execution. Proceedings were then held in the Arizona Superior Court on respondent's mental condition. That court concluded that respondent was fit to be executed. The Arizona Supreme Court rejected his appeal of that decision.

Respondent then moved in the Federal District Court to reopen his *Ford* claim. He challenged both the conclusions reached and the procedures employed by the Arizona state courts. Petitioners responded that under AEDPA, the court lacked jurisdiction. The District Court agreed with

petitioners, ruling on May 16, 1997, that it did not have jurisdiction over the claim. Respondent then moved in the Court of Appeals for permission to file a successive habeas corpus application. § 2244(b)(3).

The Court of Appeals stayed respondent's execution so that it could consider his request. It later held that § 2244(b) did not apply to a petition that raises only a competency to be executed claim and that respondent did not, therefore, need authorization to file the petition in the District Court. It accordingly transferred the petition that had been presented to a member of that court back to the District Court. 118 F. 3d, at 634–635.

We granted certiorari, 522 U. S. 912 (1997), to resolve an apparent conflict between the Ninth Circuit and the Eleventh Circuit on this important question of federal law. See, e. g., In re Medina, 109 F. 3d 1556 (CA11 1996).

Before reaching the question presented, however, we must first decide whether we have jurisdiction over this case. In AEDPA, Congress established a "gatekeeping" mechanism for the consideration of "second or successive habeas corpus applications" in the federal courts. Felker v. Turpin, 518 U. S. 651, 657 (1996); § 2244(b). An individual seeking to file a "second or successive" application must move in the appropriate court of appeals for an order directing the district court to consider his application. § 2244(b)(3)(A). The court of appeals then has 30 days to decide whether to grant the authorization to file. § 2244(b)(3)(D). A court of appeals' decision whether to grant authorization "to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari." § 2244(b)(3)(E).

If the Court of Appeals in this case had granted respondent leave to file a second or successive application, then we would be without jurisdiction to consider petitioners' petition and would have to dismiss the writ. This is not, however, what the Court of Appeals did. The Court of Appeals

held that the § 2244(b) restrictions simply do not apply to respondent's *Ford* claim, and that there was accordingly no need for him to apply for authorization to file a second or successive petition. We conclude today that the Court of Appeals reached the correct result in this case, and that we therefore have jurisdiction to consider petitioners' petition.

Section 2244(b) provides:

> "(b)(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

> "(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—

> "(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

> "(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

> "(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."

If respondent's current request for relief is a "second or successive" application, then it plainly should have been dismissed. The *Ford* claim had previously been presented in the 1993 petition, and would therefore be subject to dismissal under subsection (b)(1). Even if we were to consider the *Ford* claim to be newly presented in the 1997 petition, it does not fit within either of subsection (b)(2)'s exceptions, and dismissal would still be required.

Petitioners contend that because respondent has already had one "fully-litigated habeas petition, the plain meaning of § 2244(b) as amended requires his new petition to be treated as successive." Brief for Petitioners 12. Under that reading of the statute, respondent is entitled to only one merits judgment on his federal habeas claims. Because respondent has already presented a petition to the District Court, and the District Court and the Court of Appeals have acted on that petition, § 2244(b) must apply to any subsequent request for federal habeas relief.

But the only claim on which respondent now seeks relief is the *Ford* claim that he presented to the District Court, along with a series of other claims, in 1993. The District Court, acting for the first time on the merits of any of respondent's claims for federal habeas relief, dismissed the *Ford* claim as premature, but resolved all of respondent's other claims, granting relief on one. The Court of Appeals subsequently reversed the District Court's grant of relief. At that point it became clear that respondent would have no federal habeas relief for his conviction or his death sentence, and the Arizona Supreme Court issued a warrant for his execution. His claim then unquestionably ripe, respondent moved in the state courts for a determination of his competency to be executed. Those courts concluded that he was competent, and respondent moved in the Federal District Court for review of the state court's determination.

This may have been the second time that respondent had asked the federal courts to provide relief on his *Ford* claim, but this does not mean that there were two separate applications, the second of which was necessarily subject to § 2244(b). There was only one application for habeas relief, and the District Court ruled (or should have ruled) on each claim at the time it became ripe. Respondent was entitled to an adjudication of all of the claims presented in his earlier, undoubtedly reviewable, application for federal habeas relief. The Court of Appeals was therefore correct in holding that

respondent was not required to get authorization to file a "second or successive" application before his *Ford* claim could be heard.

If petitioners' interpretation of "second or successive" were correct, the implications for habeas practice would be far reaching and seemingly perverse. In *Picard* v. *Connor*, 404 U. S. 270, 275 (1971), we said:

> "It has been settled since *Ex parte Royall*, 117 U. S. 241 (1886), that a state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for *habeas corpus*. . . . The exhaustion-of-state-remedies doctrine, now codified in the federal habeas statute, 28 U. S. C. §§ 2254(b) and (c), reflects a policy of federal-state comity. . . . It follows, of course, that once the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."

Later, in *Rose* v. *Lundy*, 455 U. S. 509, 522 (1982), we went further and held that "a district court must dismiss habeas petitions containing both unexhausted and exhausted claims." But none of our cases expounding this doctrine have ever suggested that a prisoner whose habeas petition was dismissed for failure to exhaust state remedies, and who then did exhaust those remedies and returned to federal court, was by such action filing a successive petition. A court where such a petition was filed could adjudicate these claims under the same standard as would govern those made in any other first petition.

We believe that respondent's *Ford* claim here—previously dismissed as premature—should be treated in the same manner as the claim of a petitioner who returns to a federal habeas court after exhausting state remedies. True, the cases are not identical; respondent's *Ford* claim was dismissed as premature, not because he had not exhausted state remedies, but because his execution was not imminent and therefore

his competency to be executed could not be determined at that time. But in both situations, the habeas petitioner does not receive an adjudication of his claim. To hold otherwise would mean that a dismissal of a first habeas petition for technical procedural reasons would bar the prisoner from ever obtaining federal habeas review. See, *e. g., United States ex rel. Barnes* v. *Gilmore,* 968 F. Supp. 384, 385 (ND Ill. 1997) ("If Barnes continues in his nonpayment of the required $5 filing fee . . . this Court will be constrained to dismiss his petition"); *Marsh* v. *United States District Court for the Northern District of California,* 1995 WL 23942 (ND Cal., Jan. 9, 1995) ("Because petitioner has since not paid the filing fee nor submitted a signed affidavit of poverty, the petition for writ of habeas corpus is dismissed without prejudice"); *Taylor* v. *Mendoza,* 1994 WL 698493 (ND Ill., Dec. 12, 1994).*

Petitioners place great reliance on our decision in *Felker* v. *Turpin,* 518 U. S. 651 (1996), but we think that reliance is misplaced. In *Felker* we stated that the "new restrictions on successive petitions constitute a modified res judicata rule, a restraint on what used to be called in habeas corpus practice 'abuse of the writ.'" *Id.,* at 664. It is certain that respondent's *Ford* claim would not be barred under any form of res judicata. Respondent brought his claim in a timely fashion, and it has not been ripe for resolution until now.

Thus, respondent's *Ford* claim was not a "second or successive" petition under §2244(b) and we have jurisdiction to review the judgment of the Court of Appeals on petitioners' petition for certiorari. But for the same reasons that we find we have jurisdiction, we hold that the Court of Appeals was correct in deciding that respondent was entitled to a

---

*This case does not present the situation where a prisoner raises a *Ford* claim for the first time in a petition filed after the federal courts have already rejected the prisoner's initial habeas application. Therefore, we have no occasion to decide whether such a filing would be a "second or successive habeas corpus application" within the meaning of AEDPA.

hearing on the merits of his *Ford* claim in the District Court. The judgment of the Court of Appeals is therefore

*Affirmed.*

JUSTICE SCALIA, with whom JUSTICE THOMAS joins, dissenting.

It is axiomatic that "the power to award the writ [of habeas corpus] by any of the courts of the United States, must be given by written law." *Ex parte Bollman*, 4 Cranch 75, 94 (1807) (opinion of Marshall, C. J.). And it is impossible to conceive of language that more clearly precludes respondent's renewed competency-to-be-executed claim than the written law before us here: a "claim *presented* in a second or successive habeas corpus application . . . that was *presented* in a prior application shall be dismissed." 28 U. S. C. § 2244(b)(1) (1994 ed., Supp. II) (emphasis added). The Court today flouts the unmistakable language of the statute to avoid what it calls a "perverse" result. *Ante*, at 644. There is nothing "perverse" about the result that the statute commands, except that it contradicts pre-existing judge-made law, which it was precisely the purpose of the statute to change.

Respondent received a full hearing on his competency-to-be-executed claim in state court. The state court appointed experts and held a 4-day evidentiary hearing, after which it found respondent "aware that he is to be punished for the crime of murder and . . . aware that the impending punishment for that crime is death . . . ." App. 172. Respondent appealed this determination to the Supreme Court of Arizona, which accepted jurisdiction and denied relief. He sought certiorari of that denial in this Court, which also denied relief. To say that it is "perverse" to deny respondent a second round of time-consuming lower-federal-court review of his conviction and sentence—because that means forgoing lower-federal-court review of a competency-to-be-executed claim that arises only after he has already sought federal

habeas on other issues—is to say that state-court determinations must always be reviewable, not merely by this Court, but by federal district courts. That is indeed the principle that this Court's imaginative habeas-corpus jurisprudence had established, but it is not a principle of natural law. Lest we forget, Congress did not even have to create inferior federal courts, U. S. Const., Art. I, §8, cl. 9; Art. III, §1, let alone invest them with plenary habeas jurisdiction over state convictions. And for much of our history, as JUSTICE THOMAS points out, *post*, at 652, prisoners convicted by validly constituted courts of general criminal jurisdiction had no recourse to habeas corpus relief *at all.* See *Wright* v. *West,* 505 U. S. 277, 285–286 (1992) (opinion of THOMAS, J.).

It seems to me much further removed from the "perverse" to deny second-time collateral federal review than it is to treat state-court proceedings as nothing more than a procedural prelude to lower-federal-court review of state supreme-court determinations. The latter was the regime that our habeas jurisprudence established and that the Antiterrorism and Effective Death Penalty Act (AEDPA) intentionally revised—to require extraordinary showings before a state prisoner can take a second trip around the extended district-court-to-Supreme-Court federal track. It is wrong for us to reshape that revision on the very lathe of judge-made habeas jurisprudence it was designed to repair.

Today's opinion resembles nothing so much as the cases of the 1920's that effectively decided that the Clayton Act, designed to eliminate federal-court injunctions against union strikes and picketing, "restrained the federal courts from nothing that was previously proper." T. Powell, The Supreme Court's Control Over the Issue of Injunctions in Labor Disputes, 13 Acad. Pol. Sci. Proc. 37, 74 (1928). In criticizing those cases as examples of *Gefühlsjurisprudenz* (and in insisting upon "the necessity of preferring . . . the *Gefühl* of the legislator to the *Gefühl* of the judge"), Dean Landis recalled Dicey's trenchant observation that "'judge-

made law occasionally represents the opinion of the day before yesterday.'" Landis, A Note on "Statutory Interpretation," 43 Harv. L. Rev. 886, 888 (1930), quoting A. Dicey, Law and Opinion in England 369 (1926). As hard as it may be for this Court to swallow, in yesterday's enactment of AEDPA Congress curbed our prodigality with the Great Writ. The words that Landis applied to the Clayton Act fit very nicely the statute that emerges from the Court's decision in the present case: "The mutilated [AEDPA] bears ample testimony to the 'day before yesterday' that judges insist is today." 43 Harv. L. Rev., at 892. I dissent.

JUSTICE THOMAS, with whom JUSTICE SCALIA joins, dissenting.

From 1986 to 1991, respondent filed three petitions for federal habeas relief; each was dismissed on the ground that respondent had not yet exhausted his state remedies. In March 1993, respondent filed his fourth federal habeas petition presenting, *inter alia,* his claim under *Ford* v. *Wainwright,* 477 U. S. 399 (1986), that he was not competent to be executed. Finding that some of respondent's claims were procedurally defaulted, that others were without merit, and that respondent's *Ford* claim was not ripe for decision, the Court of Appeals held that the fourth petition should be denied. In May 1997, after the Arizona state courts rejected his *Ford* claim, respondent returned for a fifth time to federal court, again arguing that he was incompetent to be executed. Because this filing was a "second or successive habeas corpus application," respondent's *Ford* claim should have been dismissed. I therefore respectfully dissent.

Unlike the Court, I begin with the plain language of the statute. Section 2244(b)(1) provides that a "claim presented in a second or successive habeas corpus application . . . that was presented in a prior application shall be dismissed." 28 U. S. C. § 2244(b)(1) (1994 ed., Supp. II). An "application" is a "putting to, placing before, preferring a request or petition

to or before a person. The act of making a request for something." Black's Law Dictionary 98–99 (6th ed. 1990); see also Webster's Ninth New Collegiate Dictionary 97 (1991) (application is a "request, petition . . . a form used in making a request"). Respondent's March 1993 federal habeas petition was clearly a habeas "application" (the Court concedes as much), because it placed before the District Court respondent's request for a writ of habeas corpus. Once this application was denied, however, none of respondent's claims for relief—including his claim that he was incompetent to be executed—remained before the Court. It was thus necessary for respondent to file a new request for habeas relief so that his *Ford* claim would again be "pu[t] to" or "plac[ed] before" the District Court. (The Court certainly did not raise respondent's *Ford* claim *sua sponte*.) Respondent's May 1997 request for relief was therefore a habeas application distinct from his earlier requests for relief, and it was thus undoubtedly "second or successive."

Respondent's *Ford* claim was also "presented" in both his March 1993 and his May 1997 habeas applications. To "present" is "to bring or introduce into the presence of someone" or "to lay (as a charge) before a court as an object of inquiry." Webster's Ninth New Collegiate Dictionary 930 (1991). Respondent clearly "presented" his *Ford* claim in both his 1993 and his 1997 habeas applications, for in each he introduced to the District Court his argument that he is not competent to be executed. Under the plain meaning of the statute, therefore, respondent's *Ford* claim was a "claim presented in a second or successive habeas corpus application . . . that was presented in a prior application." § 2244(b)(1).

The reasons offered by the Court for disregarding the plain language of the statute are unpersuasive. Conceding that "[t]his may have been the second time that respondent had asked the federal courts to provide relief on his *Ford* claim," *ante*, at 643, the Court nevertheless concludes that respondent has really filed only "*one* application for habeas

relief," *ibid.* (emphasis added). The District Court, however, did not hold respondent's *Ford* claim in abeyance when it denied his March 1993 habeas petition, so that claim was no longer before the District Court in May 1997. At best, then, respondent's May 1997 filing was an effort to reopen his *Ford* claim. But that filing (which is most definitely an "application") is subject to the statutory requirements for second or successive habeas applications. As we have recently stated in a closely related context:

> "[A] prisoner's motion to recall the mandate on the basis of the merits of the underlying decision can be regarded as a second or successive application for purposes of § 2244(b). Otherwise, petitioners could evade the bar against relitigation of claims presented in a prior application, § 2244(b)(1), or the bar against litigation of claims not presented in a prior application, § 2244(b)(2)." *Calderon* v. *Thompson, ante,* at 553.

In just the same way, habeas petitioners cannot be permitted to evade § 2244(b)'s prohibitions simply by moving to reopen claims already presented in a prior habeas application.

The Court also reasons that respondent's "*Ford* claim here—previously dismissed as premature—should be treated in the same manner as the claim of a petitioner who returns to a federal habeas court after exhausting state remedies," for "in both situations, the habeas petitioner does not receive an adjudication of his claim." *Ante,* at 644, 645. Implicit in the Court's reasoning is its assumption that a prisoner whose habeas petition has been dismissed for failure to exhaust state remedies, and who then exhausts those remedies and returns to federal court, has not then filed a "second or successive habeas corpus application." § 2244(b)(1). To be sure, "none of our cases . . . ha[s] ever suggested" that a prisoner in such a situation was filing a successive petition. See *ante,* at 644. But that is because, before enactment of the Antiterrorism and Effective Death Penalty Act of 1996

(AEDPA), 110 Stat. 1218, a federal court could grant relief on a claim in a second or successive application so long as the ground for relief had not already been "presented *and determined*," 28 U. S. C. § 2244(a) (emphasis added), or "adjudicated," § 2244(b), in a previous application. Claims presented in a petition dismissed for failure to exhaust are neither "determined" nor "adjudicated." Thus, the pre-AEDPA practice of permitting petitioners to raise claims already presented in applications dismissed for failure to exhaust says nothing about whether those later applications were considered second or successive.

Even if the Court were correct that such an application would not have been considered second or successive, such a case is altogether different from this case, in which only one of many claims was not adjudicated. In the former situation, the federal court dismisses the unexhausted petition without prejudice, see *Rose* v. *Lundy*, 455 U. S. 509, 520–522 (1982), so it could be argued that the petition should be treated as if it had never been filed. In contrast, when a court addresses a petition and adjudicates some of the claims presented in it, that petition is certainly an "application," and any future application must be "second or successive."[1] Otherwise, the court would have adjudicated the merits of claims that had not been presented in an "application."[2]

Ultimately, the Court's holding is driven by what it sees as the "far reaching and seemingly perverse" implications for federal habeas practice of a literal reading of the statute.

---

[1] If the Court's position is that respondent's May 1997 filing was an "application," but not a "second or successive" one, presumably 28 U. S. C. § 2244(b) (1994 ed., Supp. II) would not have precluded respondent from presenting, along with his claim under *Ford* v. *Wainwright*, 477 U. S. 399 (1986), a claim previously adjudicated *on the merits*, for § 2244(b) operates to bar only those claims presented in "second or successive" applications.

[2] Even if a claim dismissed without prejudice could be treated as having never been presented, dismissal, as the Court concedes, would still be required because a *Ford* claim does not fit within § 2244(b)(2)(B)'s exceptions for claims not presented in prior applications. See *ante*, at 642.

*Ante,* at 644. Such concerns are not, in my view, sufficient to override the statute's plain meaning. And to the extent concerns about habeas practice motivate the Court's decision, it bears repeating that federal habeas corpus is a statutory right and that this Court, not Congress, has expanded the availability of the writ. Before this judicial expansion, a prisoner seeking a writ of habeas corpus was permitted to challenge only the jurisdiction of the court that had rendered the judgment under which he was in custody. See *Wright* v. *West,* 505 U. S. 277, 285–286 (1992) (opinion of THOMAS, J.). A *Ford* claim obviously does not present such a challenge.[3] A statute that has the effect of precluding adjudication of a claim that for most of our Nation's history would have been considered noncognizable on habeas can hardly be described as "perverse."

Accordingly, whether one considers respondent's March 1993 federal habeas petition to have been his *first* habeas application—because his three previous applications had been dismissed for failure to exhaust—or his *fourth*—because respondent had already filed three previous habeas applications by that time—his May 1997 request for relief was undoubtedly either a "second" (following his first) or "successive" (following his fourth) habeas application. Respondent's *Ford* claim, presented in this second or successive application, should have been dismissed as a "claim . . . presented in a prior application." § 2244(b)(1).

---

[3] There is an additional reason why a state prisoner's *Ford* claim may not be cognizable on federal habeas. A state prisoner may bring a federal habeas petition "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U. S. C. § 2254. A *Ford* claim does not challenge either the prisoner's underlying conviction or the legality of the sentence; it challenges *when* (or whether) the sentence can be carried out.