IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-21208
_____


JAMES BLAKE COLBURN

                              Petitioner - Appellant

        v.

JANIE COCKRELL, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, INSTITUTIONAL DIVISION


                              Respondent - Appellee

_____

On Application for a Certificate of Appealability
Appeal from the United States District Court
for the Southern District of Texas
No. H-02-4180
_____
November 6, 2002

Before KING, Chief Judge, and JOLLY and DeMOSS, Circuit Judges.

PER CURIAM:[*]

        Petitioner-Appellant James Blake Colburn, who is scheduled

to be executed at 6 pm on November 6, 2002, seeks a certificate

of appealability (COA) in order to appeal the Order of the

_____

        [*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

District Court for the Southern District of Texas denying his Motion for Stay of Execution, Motion for Appointment of Counsel and Motion for Constitutionally Adequate Determination of Mr. Colburn's Present Competency To Be Executed. Colburn's motions to the district court were premised on his argument that he is incompetent to be executed under the standards set forth in Ford v. Wainwright, 477 U.S. 399 (1986). We decline to issue a COA.

I. FACTS AND PROCEDURAL HISTORY

Briefly, Colburn was convicted and sentenced to death in 1995 for the murder of a woman hitchhiking near his home. The Court of Criminal Appeals denied his appeal; in doing so, it refused to consider the claim that he was incompetent to be executed, finding it unripe for consideration because Colburn's execution was not imminent. Colburn v. State, 966 S.W.2d 511, 513 (Tex. Crim. App. 1998). After exhausting state habeas relief, he filed a federal petition for a writ of habeas corpus in the District Court for the Southern District of Texas in 1999. In that petition, Colburn raised several issues, including his lack of competency to stand trial. However, Colburn did not raise the claim that he was incompetent to be executed under the Ford standard. The district court denied his request for relief. In an unpublished opinion, we denied his request for a COA on any of the issues raised.

Execution was set for November 6, 2002. On September 24, 2002, the state filed a request in state court for a mental

2

evaluation of Colburn's competency to be executed. Colburn filed a Motion to Stop Involuntary Psychiatric Treatment; and To Conduct Competency Examination After Proper Diagnosis of Psychiatric Disorder. He also moved to stay his date of execution and for appointment of, and funding for, an independent psychiatric expert. The state court denied all of Colburn's motions.

Colburn was evaluated by two experts appointed by the court (but recommended by the state); the experts agreed that, while Colburn suffered from some form of schizoaffective disorder, he understood the reasons he was being executed and otherwise satisfied the Ford requirements. Colburn then filed an additional motion for a new competency evaluation by a "qualified" expert; with it, he filed an affidavit from an expert who argued that the court's experts had misdiagnosed Colburn and that he could not definitively be found competent to be executed without much more extensive psychiatric testing. The state court denied that motion as well.

On November 6, Colburn filed in federal district court a Motion for Stay of Execution, Motion for Appointment of Counsel and Motion for Constitutionally Adequate Determination of Mr. Colburn's Present Competency To Be Executed. Colburn argued that the Texas statutory provisions for determining competency to be executed provided inadequate due process in violation of the Eighth and Fourteenth Amendments. See TEX. CRIM. PRO. CODE ANN. §

3

46.05 (Vernon 2002) (setting forth the procedure for determining competency to be executed). The district court, treating Colburn's motion as a petition for writ of habeas corpus, first found that Colburn had not raised a <u>Ford</u> claim in his original habeas petition. Because this was a successive petition, the court held that Colburn could not file it in the district court until he had "move[d] in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(3)(A) (2000). Therefore, the court denied Colburn's request for relief.

The district court denied Colburn's request for a COA on the question of whether the court had jurisdiction to rule on his claims. Colburn now appeals to this court seeking a COA on his jurisdictional question.

II. APPLICABLE LAW

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a petitioner must obtain a COA before he can receive full appellate review of the lower court's denial of habeas relief. <u>See</u> 28 U.S.C. § 2253(c)(1)(A) (2000) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court."). We may grant the petitioner's request for a COA only if he makes a

4

"substantial showing of the denial of a constitutional right."
Id. § 2253(c)(2).

To make such a showing, Colburn must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Dowthitt v. Johnson, 230 F.3d 733, 740 (5th Cir. 2000), cert. denied, 532 U.S. 915 (2001) (quoting Slack v. McDaniel, 529 U.S. 473, 483-84 (2000)). Where, as here, the district court has denied the petitioner's claim on procedural grounds, the petitioner must demonstrate both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling" in order to obtain a COA. Slack, 529 U.S. at 484.

III. COLBURN'S ATTEMPT TO FILE A SUCCESSIVE PETITION

The district court's procedural ruling in this case was that it lacked the jurisdiction to consider Colburn's request for relief because he was presenting it as part of a successive habeas petition without first getting permission to do so as required by § 2244(3)(A). As already discussed, Colburn has previously filed a petition for habeas relief in federal court; that petition was denied. Therefore, the district court disposed of Colburn's petition on appropriate procedural grounds unless it

5

would be debatable among jurists of reason whether Colburn's petition was actually a successive petition within the meaning of the AEDPA.

The AEDPA does not define "second or successive." However, this court has held that a petitioner's application is "second or successive when it: (1) raises a claim challenging the petitioner's conviction or sentence that was or could have been raised in an earlier petition; or (2) otherwise constitutes an abuse of the writ." United States v. Orozco-Ramirez, 211 F.3d 862, 867 (5th Cir. 2000). Colburn argues that this is not a successive petition because he could not have raised the issue in his initial habeas petition. He argues that, had he done so, the district court would have been forced to dismiss his petition for containing both exhausted and unexhausted claims. Rose v. Lundy, 455 U.S. 509 (1982). Upon dismissal, he would have returned to state court and the Court of Criminal Appeals would have again found his Ford claim unripe. Ultimately, he argues that he would have been foreclosed from raising any habeas petition at all until an execution date had been set (thereby making his Ford claim ripe for appeal).

However, nothing in Rose says that an argument must have been adjudicated to be found exhausted. Exhaustion requires only that the state court be provided with a "fair opportunity" to consider the claim. Duncan v. Henry, 513 U.S. 364, 365 (1995). If Colburn had raised the claim in the state court (as he did

6

here) and then presented his claim in his original federal habeas petition, the district court could have dismissed it as unripe without running afoul of Rose's proscription against mixed habeas petitions.

The Supreme Court has held that a petitioner who raises a Ford claim in his original petition and then re-raises it in a later petition once it is ripe for adjudication (because the execution date is imminent) is not presenting a "second or successive" petition within the meaning of § 2244. Stewart v. Martinez-Villareal, 523 U.S. 637, 644 (1998). Instead, the Ford claim is treated "in the same manner as the claim of a petitioner who returns to a federal habeas court after exhausting state remedies." Id. The Court left open the question of whether a petitioner who did not present his Ford claim in his original petition, but raised it later on, was raising it in a successive petition. Id. at 645 n.1.

However, the well-established law of this circuit is that a petitioner who fails to raise his Ford claim in his original habeas petition may not later raise it as part of a subsequent petition. In re Davis, 121 F.3d 952, 955-56 (5th Cir. 1997). While the vitality of Davis was questioned after Stewart, we recently reconsidered Davis in the light of Stewart and reaffirmed the Davis holding. Richardson v. Johnson, 256 F.3d 257, 258-59 (5th Cir. 2001).

7

In <u>Richardson</u>, we considered the argument that § 2244 should not apply to <u>Ford</u> claims because they cannot become ripe until execution is imminent.  We noted that accepting such an argument "would mean as a practical matter that no <u>Ford</u> claim would need to be presented in a first filed habeas, given that state courts, in part at our urging, now seldom set execution dates until after the first round of appeals and habeas."  <u>Id.</u> at 259.

Furthermore, focusing on the first <u>Slack</u> inquiry - whether jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right - like the petitioner in <u>Richardson</u>, Colburn here has pointed "to nothing which shows that he is presently incompetent to be executed."  <u>Id.</u>  The state court appointed two qualified mental health experts as a precautionary measure to evaluate his competence to be executed.  Both reported that Colburn was competent to be executed, as required by <u>Ford</u> and Tex. Crim. Pro. Code Ann. § 46.05.

Colburn's motions basically come down to an argument that the state court's procedure was unconstitutional because it failed to permit him to be evaluated by his own expert. However, we have previously determined that the statutory procedure under § 46.05 is constitutionally adequate and that the defendant has no right to an expert of his own choosing.  <u>Caldwell v. Johnson</u>, 226 F.3d 367, 370 (5th Cir.), <u>cert. denied</u>, 530 U.S. 1298 (2000).

IV.  CONCLUSION

8

It is not debatable among jurists of reason whether Colburn was presenting his Ford claim as part of a successive habeas petition.  Therefore, the district court properly refused to rule on Colburn's motions because he had failed to apply for permission to file a successive petition as required by § 2244(3)(A).  We deny his request for a COA.