**Percy Levar WALTON, Petitioner,**

v.

**Gene JOHNSON, Director Virginia Department of Corrections, Respondent.**

**No. CIV.A.7:03 CV 00347.**

United States District Court, W.D. Virginia, Roanoke Division.

May 24, 2004.

Order Denying Misc. Relief May 25, 2004.

Jennifer L. Givens, Charlottesville, VA, for Petitioner.

Robert Q. Harris, Office of Attorney General, Richmond, VA, for Respondent.

### MEMORANDUM OPINION

WILSON, District Judge.

Pursuant to the Court of Appeals' authorization to file a successive petition "alleging that his mental retardation bars his execution," Percy Levar Walton filed a successive petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 claiming that his sentence of death for three counts of capital murder violates the Eighth Amendment because he is mentally retarded, incompetent to be executed, and incompetent to select the method of his execution. This court rejected the mental retardation and competency to be executed claims and dismissed Walton's petition. Walton now moves for reconsideration and to alter judgment pursuant to Federal Rule of Civil Procedure 59(e). For the reasons stated the court grants Walton's motion to reconsider but denies his motion to alter the judgment.

### I.

In November of 1996, Walton murdered three neighbors. Walton pled guilty to three counts of capital murder, and the trial judge sentenced him to death. Walton exhausted his state court remedies and then filed a habeas petition with this court, arguing that he was incompetent to be executed and incompetent to plead guilty, among other claims. After conducting an evidentiary hearing on the issue of Walton's competency to plead guilty, this court declined to address Walton's claim that he was incompetent to be executed because

Walton's execution was not imminent and denied Walton's remaining claims. *Walton v. Angelone,* No. 7:99cv00940, 2002 WL 467142 (W.D.Va. Mar.27, 2002). The Fourth Circuit affirmed, *Walton v. Angelone,* 321 F.3d 442 (4th Cir.2003) and the Supreme Court denied certiorari. *Walton v. Johnson,* 539 U.S. 950, 123 S.Ct. 2626, 156 L.Ed.2d 642 (2003).

Virginia set an execution date for May 28, 2003. Sometime on or before May 13, 2003, Walton selected electrocution over lethal injection as his method of execution. On May 23, 2003, more than eleven months after the United States Supreme Court held in *Atkins v. Virginia,* 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) that the constitution prohibits the execution of the mentally retarded, Walton filed an emergency motion with the Fourth Circuit to authorize a successive habeas corpus petition. On the same day, the Fourth Circuit granted "Walton's motion for leave to file a successive habeas corpus petition in the United States District Court of Virginia *alleging that his mental retardation bars his execution." In re: Percy Levar Walton,* No. 03–7 (4th Cir. May 23, 2003) (emphasis added). Walton filed a motion to stay his execution, and this court granted the motion on May 25, 2003. On June 2, 2003, Walton filed the present petition presenting three claims: (1) Walton's execution is barred by *Atkins* because he is mentally retarded; (2) "Walton's selection of his method of execution involved an unconstitutional waiver of his Eighth Amendment right"; and (3) Walton is not competent to be executed under *Ford v. Wainwright,* 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986).

In an opinion and order dated July 2, 2003, this court rejected Walton's mental retardation claim. In rejecting the claim, the court considered the results of four IQ tests. When Walton was seventeen, he received the Wechsler Adult Intelligence

Scale—Revised ("WAIS–R") IQ test and achieved a full-scale score of 90, placing him in the "average" range of intelligence. When Walton was eighteen, he completed the WAIS–R IQ test again and achieved a full-scale IQ of 77, placing him in the "low average" range, but not in the mental retardation range. When Walton was twenty, he was again given the WAIS–R IQ test and scored a full-scale IQ of 69. Finally, when Walton was twenty-four, he received the "GAMA" test and scored a 66, a result considered "well below average." In a footnote, the court observed that the GAMA test heavily relied upon by Walton was generally used as a screening device and was not one of the standardized tests of intellectual function recognized by the Virginia Department of Mental Health. The court also considered the opinions of Dr. Stanton Samenow and Dr. Patricia General, both of whom opined that Walton was not mentally retarded. The court did not expressly reject Walton's competency claims at that time, but did note that "the question of Walton's competency to select his method of execution is, in effect, subsumed by the question of whether Walton is competent to be executed."

On March 4, 2004, after conducting two evidentiary hearings and considering the testimony of five doctors, the court found that Walton understood why he was being punished and that he was being punished by execution. Accordingly, the court rejected Walton's competency to be executed claim and dismissed his habeas petition.[1] The case is now before the court on Walton's motion for reconsideration [2] and "Motion Pursuant to Rule 59(e)."

## II.

Walton asserts that this court did not address his second claim for relief before entering final judgment. In this claim, Walton argues he was "not competent to make a knowing, intelligent, and voluntary waiver of his Eighth Amendment right not to be executed in an unconstitutional manner." According to Walton, electrocution is an unconstitutional method of execution, and, although usually when an inmate chooses a method of execution, he waives any objection to the selected method, *Stewart v. LaGrand,* 526 U.S. 115, 119 S.Ct. 1018, 143 L.Ed.2d 196 (1999), Walton was not competent to waive his objection to the constitutionality of electrocution. Because the court entered a final order without explicitly rejecting this claim, the court grants Walton's motion for reconsideration. However, the court dismisses this claim as an unauthorized successive habeas petition. Alternatively, the court denies relief on the claim for three reasons.[3]

1. Furthermore, this evidence was considered against the backdrop of the court's earlier evidentiary hearing regarding Walton's competency to plead guilty.

2. Walton styled his motion as a "Motion for Ruling on Claim II and/or Entry of Final Judgment." Because a final judgment had already been entered, the court construes the motion as a motion for reconsideration.

3. Respondent argues that Walton procedurally defaulted his competency to select the method of execution claim. The court disagrees. The respondent states in its motion to dismiss that "Virginia capital habeas petitioners, moreover, are entitled to one and

only one habeas petition. *See* Va.Code § 8.01–654.1 ('No petition . . . filed by a prisoner held under a sentence of death shall be considered unless it is filed within sixty days after the [conclusion of direct appeal]')." By its very nature, a competency to select the method of execution claim cannot be raised until after the inmate has selected his method of execution. In the present case, Walton's competency to select the method of execution claim did not arise until after he had exhausted the state habeas proceedings. Consequently, according to the respondent's interpretation of Virginia law, "there is an absence of available State corrective process," 28

■ Walton's competency to select the method of execution claim is an unauthorized successive habeas corpus petition. The court has jurisdiction over Walton's competency to be executed claim because he included it in his first federal habeas petition, and this court declined to address it at that time because it was not ripe, *see Stewart v. Martinez–Villareal,* 523 U.S. 637, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998), and the court has jurisdiction over the mental retardation claim because the Fourth Circuit authorized him to file a successive habeas petition raising this claim. However, Walton's competency to select the method of execution was neither raised in the initial federal habeas petition[4] and dismissed as not ripe, nor authorized by the Fourth Circuit. Consequently, this court must dismiss the claim pursuant to 28 U.S.C. § 2244(b).

■ Even if Walton's competency to select the method of execution claim were not an unauthorized successive petition, the court still would deny relief for three reasons. First Walton's claim appears to be moot. Because this court stayed Walton's execution date, Walton will have another opportunity to select his method of execution. *See* Va.Code § 53.1–234.

■ Second, to the extent Walton's claim is not moot, every court that has considered the issue has held that electrocution does not violate the Eighth Amendment's bar to cruel and unusual punishment. *Louisiana ex rel. v. Resweber,* 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422 (1947); *In re Kemmler,* 136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519 (1890); *Jones v. Whitley,* 938 F.2d 536 (5th Cir.1991); *Lindsey v. Smith,* 820 F.2d 1137, 1155 (11th Cir.1987). *See also Poyner v. Murray,* 1993 U.S.App. LEXIS 38227 (4th Cir.1993) (citing cases). When an inmate is competent to be executed, his selection of a constitutional method of execution is of no constitutional significance.

■ Finally, the court finds that Walton is competent to select a method of execution. Although no court has yet articulated the standard of competency to select a method of execution, the court finds the standard does not differ significantly from the standard for competency to be executed-understanding the reason for and nature of one's punishment. This court has already found that Walton understands why he is being punished and that he will be punished by execution. Furthermore, the court also finds that Walton has consistently selected electrocution as a method of execution and that he understands that electrocution will result in his death. Before pleading guilty, Walton stated "the chair is for killers" and that he wanted to plead guilty, get "the chair" and "go out like a man." Dr. Samenow testified that Walton "understood that a capital murder charge can result in the death penalty 'by

U.S.C. § 2254(b)(1)(B)(i), and the claim is not defaulted.

4. Under *Stewart,* this court may only consider those claims "fairly presented" to it in the initial federal habeas petition and which this court dismissed as not ripe. "Fair presentation contemplates that 'both the operative facts and the controlling legal principles' must be presented ..." *Matthews v. Evatt,* 105 F.3d 907, 911 (4th Cir.1997) (quoting *Verdin v. O'Leary,* 972 F.2d 1467, 1474 (7th Cir.1992); *see Stewart,* 523 U.S. at 644, 118

S.Ct. 1618) ("We believe that respondent's *Ford* claim here-previously dismissed as premature-should be treated in the same manner as the claim of a petitioner who returns o a federal habeas court after exhausting state remedies."). Walton did not indicate in his initial federal habeas that Walton's ability to select a method of execution or the constitutionality of electrocution would be at issue; consequently, the court finds that Walton did not fairly present this claim to the court in his initial federal habeas petition.

electric chair or needle.' " More recently, Dr. Mills, the psychiatrist appointed by this court, testified that Walton expressed a preference to die by electrocution. Particularly revealing is the testimony of Allen Glasgow, a rehabilitation counselor who was with Walton on May 23, 2003–just a few days after Walton selected his method of execution. Glasgow testified that Walton communicated well, completed a visitor's form without assistance, and stated that he wanted his mother to receive his remains upon his death. The court finds that Glasgow's testimony is credible and lends support to the conclusion that Walton sufficiently understood the method of execution he was selecting. The court accordingly denies habeas relief on Walton's claim that he is not competent to select his method of execution.

### III.

█ Walton moves for this court to amend its July 2, 2003, Order dismissing his mental retardation claim. In support of his motion, Walton cites a change in policy adopted by the Virginia Department of Mental Health making the GAMA IQ test a recognized standardized test of intellectual function. The court finds that this intervening change in policy does not affect the merits of Walton's mental retardation claim and accordingly denies Walton's motion to amend the July 2, 2003, Order. In finding that Walton was not mentally retarded, the court considered the GAMA test results as well as the results of the three WAIS–R IQ tests and the opinions of two doctors. The fact that the Virginia Department of Mental Health has since upgraded the status of the GAMA test to equal that of the WAIS–R does not give this court reason to alter its previous judgment.

### IV.

For the reasons stated, the court denies Walton's motion to alter judgment, grants Walton's "Motion for Ruling on Claim II and/or Entry of Final Judgment," and denies Walton's petition for a writ of habeas corpus.

### *ORDER*

Yesterday, this court reconsidered its earlier order dismissing Percy Levar Walton's habeas petition and denied his motion to alter or amend the court's judgment. The court denied on alternative grounds Walton's motion for reconsideration. The court concluded that Walton's claim that he is not competent to select the method of his execution is successive. Alternatively, the court rejected the claim on its merits. Yesterday, the Supreme Court of the United States decided *Nelson v. Campbell*, —— U.S. ——, 124 S.Ct. 2117, 158 L.Ed.2d 924 (2004), which held that a suit pursuant to 42 U.S.C. §1983 only "seeking to enjoin a particular means of effectuating a sentence of death" is not subject to 28 U.S.C. §2244(b)'s gate-keeping requirements because the state could have proceeded with the execution "by simply altering its method of execution." This court has revisited its decision sua sponte in light of *Nelson* and concluded that an alteration or amendment of its judgment remains unwarranted.