# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-3739

_____

Paul T. Goodwin

*Petitioner - Appellant*

v.

Troy Steele

*Respondent - Appellee*

_____

No. 14-3743

_____

Paul T. Goodwin

*Petitioner*

v.

Troy Steele

*Respondent*

_____

Appeals from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: December 8, 2014
Filed: December 9, 2014
[Published]

_____

Before MURPHY, COLLOTON, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

Paul Goodwin, who is scheduled to be executed on December 10, 2014, has filed an application for a certificate of appealability with respect to his Eighth Amendment claim of intellectual disability. In the alternative, Goodwin has filed a motion for authorization to file a second or successive application. In both of these filings, Goodwin claims that he is intellectually disabled and that the Supreme Court of Missouri issued a decision that was contrary to the United States Supreme Court's decision in *Hall v. Florida*, 134 S. Ct. 1986 (2014). We deny Goodwin's application for a certificate of appealability and deny his motion for authorization to file a second or successive application. We also deny Goodwin's related motions for stay.

Goodwin was convicted of first-degree murder and sentenced to death, and the Supreme Court of Missouri affirmed his conviction and sentence. *State v. Goodwin*, 43 S.W.3d 805, 809 (Mo. 2001). A state motion court denied Goodwin's request for post-conviction relief, and the Supreme Court of Missouri affirmed. *Goodwin v. State*, 191 S.W.3d 20, 23 (Mo. 2006). In rejecting Goodwin's argument that he established significantly sub-average intellectual functioning, the court noted that "Goodwin has eight independent intelligence tests spread over twenty years that indicated that Goodwin is not retarded." *Id.* at 30. Based upon this record, the court concluded that Goodwin's single IQ score within the five-point margin of error for the Wechsler scale of sub-average intellectual functioning was "inadequate to raise a triable issue of fact." *Id.* at 30-31. Goodwin thereafter filed a petition under 28

U.S.C. § 2254, raising numerous claims. As Goodwin now admits, he asserted in one of these claims that he was intellectually disabled, rendering his execution unconstitutional under *Atkins v. Virginia*, 536 U.S. 304 (2002). The district court denied relief on this claim and declined to issue a certificate of appealability. *See Goodwin v. Roper*, No. 4:06CV848, 2009 WL 3228696, at \*21, 26 (E.D. Mo. Sept. 30, 2009).

Shortly after his date of execution was set, Goodwin filed a motion to recall the mandate in the Supreme Court of Missouri, arguing that its earlier decision conflicts with the Supreme Court's decision in *Hall*. After the Supreme Court of Missouri overruled this motion, Goodwin raised this claim before the district court in a supplemental petition for a writ of habeas corpus. The district court found that Goodwin's *Hall* claim is barred by 28 U.S.C. § 2244(b)(1) and also concluded that it fails on the merits. The district court declined to grant a certificate of appealability, prompting Goodwin to file an application for a certificate of appealability and a motion for authorization to file a second or successive application.

We state our conclusions briefly because of the exigency of time. We first conclude that jurists of reason would not find debatable the correctness of the district court's conclusion that Goodwin's claim is barred by 28 U.S.C. § 2244(b)(1). *See Slack v. McDaniel*, 529 U.S. 473, 478 (2000). This provision provides that "[a] claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed." § 2244(b)(1). Goodwin concedes in his application that "[i]n his original habeas proceeding, [he] raised the claim that he is mentally retarded and ineligible for execution under [sic] *Adkins*." In particular, in Ground "I" of his initial habeas application, Goodwin asserted that "[t]he Eighth Amendment precludes the execution of the mentally retarded" and that "clear and convincing evidence exists that [Goodwin] is mentally retarded." Goodwin seeks to distinguish this claim from his current claim, arguing only that the latter claim is premised on *Hall*, not *Atkins*, and asserting that this difference matters.

This argument runs headlong into our decision in *Thompson v. Nixon*, 272 F.3d 1098 (8th Cir. 2001). There, the petitioner filed a motion to recall the mandate and claimed that a recent Supreme Court decision allowed him to bypass the limit on second or successive applications set forth in § 2244(b)(1). *Id.* at 1099. We rejected this reading of § 2244(b)(1), concluding that the Supreme Court decision relied upon by the petitioner "simply provides a new argument (the merits of which we need not explore) in support of the same [constitutional] claim that has been presented twice before." *Id.* at 1101. Under *Thompson*, jurists of reason cannot debate the correctness of the district court's conclusion that Goodwin's intellectual-disability claim was presented in a prior application and therefore barred under § 2244(b)(1).[1]

Second, even if this proposition were reasonably debatable, Goodwin was required to request authorization from us before pursuing a second or successive habeas application under § 2244(b)(2). *See* 28 U.S.C. § 2244(b)(3)(A) ("Before a second or successive application permitted by this section is filed in the district court, the applicant *shall move* in the appropriate court of appeals for an order authorizing the district court to consider the application." (emphasis added)). Because Goodwin did not take this statutorily required step before filing his supplemental petition, jurists of reason cannot debate the correctness of the district court's dismissal of Goodwin's supplemental petition.

---

[1] We also reject Goodwin's argument that his *Hall* claim was not "ripe" until the Supreme Court issued its decision in *Hall*. For this proposition, Goodwin relies on *Stewart v. Martinez-Villareal*, 523 U.S. 637 (1998), *Panetti v. Quarterman*, 551 U.S. 930 (2007), and *Magwood v. Patterson*, 561 U.S. 320 (2010). *Stewart* and *Panetti* concerned competency claims brought under *Ford v. Wainwright*, 477 U.S. 399 (1986), that did not become ripe for federal review until the State established a date of execution. *Stewart*, 523 U.S. at 643; *Panetti*, 551 U.S. at 947. Goodwin's Eighth Amendment claim, by contrast, ripened long ago. Nor does *Magwood* support Goodwin's ripeness argument, for the petitioner there, unlike Goodwin here, was challenging a new judgment following the grant of habeas relief. *See Magwood*, 561 U.S. at 326-28.

This brings us to Goodwin's motion for authorization to file a second or successive habeas application. 28 U.S.C. § 2244(b)(3)(C) prescribes that we may authorize the filing of such an application "only if [we] determine[] that the application makes a prima facie showing that the application satisfies the requirements of this subsection." In his motion for authorization, Goodwin contends that his intellectual-disability claim is permitted by § 2244(b)(2)(A)—namely, that the claim "was not presented in a prior application" and "the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." Even assuming Goodwin's present claim was not presented in a prior application, we conclude that Goodwin has not made this prima facie showing. In *Tyler v. Cain*, 533 U.S. 656 (2001), the Supreme Court interpreted § 2244(b)(2)(A) to conclude that a new rule is not "made retroactive" unless the Supreme Court *holds* it to be retroactive. *Id.* at 663. Under *Tyler*, it is not enough for the Supreme Court merely to "establish[] principles of retroactivity and leave[] the application of those principles to lower courts." *Id.* Justice O'Connor, who provided the decisive fifth vote in *Tyler*, further explained that the Supreme Court can "'ma[k]e' a new rule retroactive through multiple holdings that logically dictate the retroactivity of the new rule." *Id.* at 668 (O'Connor, J., concurring).

Under *Tyler*, Goodwin has not made a prima facie showing that the Supreme Court has held that *Hall* is retroactive. The Eleventh Circuit recently reached an identical conclusion. *See In re Henry*, 757 F.3d 1151, 1153 (11th Cir. 2014) (denying motion for authorization to file second or successive application "because [petitioner] cannot circumnavigate the stringent requirements for leave to file a second or successive petition found in § 2244(b)"). As the *Henry* court explained, "*Hall* made no mention of retroactivity. Nor has any subsequent Supreme Court case addressed the issue, much less made *Hall* retroactive." *Id.* at 1159. The dissent attempts to overcome the Supreme Court's total silence on the retroactivity of *Hall* by relying on the Court's other case law indicating that a substantive rule may be applied

-5-

retroactively. The dissent characterizes *Hall* as a substantive rule that altered the "class of persons that the law punishes." *Infra* at 8 (quoting *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004)). But "*Hall* merely provides new procedures for ensuring that States do not execute members of an already protected group." *Henry*, 757 F.3d at 1161. Indeed, the dissent understands *Hall* to hold that "defendants with IQ scores above 70 in Florida *may* be considered intellectually disabled under *Atkins*." *Infra* at 8 (emphasis added). Rather than announce a substantive rule, *Hall* "created a procedural requirement that those with IQ test scores within the test's standard of error would have the *opportunity* to otherwise show intellectual disability." *Henry*, 757 F.3d at 1161 (emphasis in original). This conclusion is borne out by the language of *Hall* itself: "[W]hen a defendant's IQ test score falls within the test's acknowledged and inherent margin of error, the defendant *must be able to present additional evidence of intellectual disability*, including testimony regarding adaptive benefits." 134 S. Ct. at 2001 (emphasis added).

For these reasons, we deny Goodwin's application for a certificate of appealability and deny his motion for authorization to file a second or successive habeas application. We also deny Goodwin's related motions for stay of execution.

MURPHY, Circuit Judge, concurring in part and dissenting in part.

Paul Goodwin, who is scheduled to be executed on December 10, 2014, has filed a motion for authorization to file a second or successive habeas application. He claims that the Missouri Supreme Court issued a decision that was contrary to Hall v. Florida, 134 S. Ct. 1986 (2014), when it declined to consider his adaptive functioning despite the fact that he presented evidence of an IQ score of 72. See Goodwin v. State, 191 S.W.3d 20, 30–31 (Mo. banc 2006). While acknowledging the IQ score of 72 to be within the five point margin of error for the Wechsler scale of subaverage intellectual functioning, the Missouri Supreme Court nonetheless characterized that score as "inadequate to raise a triable issue of fact." Id.

The panel majority concludes that Hall is not retroactive to cases on collateral review and that Goodwin's petition is barred as second or successive under 28 U.S.C. § 2244. I concur in the panel's denial of Goodwin's application for a certificate of appealability. I dissent from the panel's denial of the authorization to file a second or successive habeas application because Goodwin has made "a prima facie showing that the application satisfies the requirements" of § 2244, namely that his second or successive habeas petition relies "on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." Id. at § 2244(b)(2)(A).

In her controlling concurring opinion in Tyler v. Cain Justice O'Connor reasoned that the Court can make "a new rule retroactive through multiple holdings that logically dictate the retroactivity of the new rule." 533 U.S. 656, 669 (2001). And in Penry v Lynaugh the Court expressly stated that "if [it] held, as a substantive matter, that the Eighth Amendment prohibits the execution of mentally retarded persons . . . regardless of the procedures followed, such a rule would fall under the first exception to the general rule of nonretroactivity and would be applicable to defendants on collateral review." 492 U.S. 302, 330 (1989), abrogated on other grounds by Atkins, 536 U.S. at 307.

The Supreme Court held in Atkins v. Virginia, that the Eighth Amendment prohibits a state from taking the life of a mentally retarded offender. 536 U.S. 304, 321 (2002). The Court noted that "an IQ between 70 and 75 or lower" is "typically considered the cutoff IQ score for the intellectual function prong of the mental retardation definition." Id. at 309 n.5.

Then in Hall, the Court held unconstitutional a Florida law that, as interpreted by that state's supreme court, required a defendant to show an IQ score of 70 or lower before presenting additional evidence of intellectual disability. 134 S. Ct. at 1992. The Court held that "when a defendant's IQ test score falls within the test's

-7-

acknowledged and inherent margin of error, the defendant must be able to present additional evidence of intellectual disability, including testimony regarding adaptive deficits." Id.

The new rule the Supreme Court announced in Hall is substantive in nature and therefore applies retroactively. Under Atkins, defendants with IQ scores above 70 in Florida were not protected from capital punishment because they were not intellectually disabled. Now, under Hall, defendants with IQ scores above 70 in Florida may be considered intellectually disabled under Atkins. See Hall, 134 S. Ct. at 1990. By invalidating Florida's definition of the mentally retarded, the Supreme Court in Hall altered the "class of persons that the law punishes." Schriro v. Summerlin, 542 U.S. 348, 353 (2004). It thus announced a substantive rule that applies retroactively. See id. For similar reasons, Goodwin now presents a new claim that was not raised in his previous habeas application.

In reaching the opposite conclusion, the majority relies upon the Eleventh Circuit's decision in In re Henry. 757 F.3d 1151, 1163–64 (11th Cir. 2014). As the dissent in Henry pointed out, the panel majority came to this hasty conclusion a mere three weeks after Hall was decided, and as is the case here, under the time pressure of an "imminent execution" rather than in the normal course with a benefit of full briefing. Id. at 1163–64.

Goodwin has made a prima facie showing that the Missouri Supreme Court's refusal to consider his adaptive functioning was contrary to Hall. The evidentiary record before the Supreme Court in Hall showed the defendant had undergone seven admissible IQ evaluations, with one test score of 71, and a range of scores between 71 and 80. 134 S. Ct. at 1992. Here, Goodwin presented eight IQ evaluations taken before he reached the age of eighteen with one score of 72 and a range between 72 and 84.

These numbers required Missouri courts to consider evidence of Goodwin's adaptive functioning in order to determine whether he is within the class of people about whom there is a national consensus forbidding their execution, as the Supreme Court required of the Florida courts in Hall. 134 S. Ct. at 1998, 2001. This is especially true given the Court's instruction that "[c]ourts must recognize, as does the medical community, that the IQ test is imprecise," and caution that "[a] State that ignores the inherent imprecision of these tests risks executing a person who suffers from intellectual disability." Id. at 2001.

In my view the prudent course would be to recognize the retroactivity of Hall and the viability of Goodwin's claim that his rights under that decision have been denied. I would therefore grant Goodwin authorization to file his habeas application, grant the related application for stay of execution, and permit Goodwin an opportunity to litigate his claim.

_____